**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| GREEN & HEALTHY HOMES INITIATIVE, Inc., *et al.*, | * * * | |
| PLAINTIFFS, | * * | |
| v. | * * | No. 25-cv-1096 (ABA) |
| ENVIRONMENTAL PROTECTION, AGENCY, *et al.*, | * * * | |
| DEFENDANTS. | * | |

\*\*\*\*\*\*

**RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

TABLE OF AUTHORITIES ................................................................................................. 3

I.    INTRODUCTION ........................................................................................................ 7

II.   BACKGROUND FACTS ............................................................................................. 7

      A.    The Clean Air Act does not require the EPA to fund specific grants. ................... 7

      B.    More than seventy-seven million people voted for President Trump, who promised to overhaul federal spending and eliminate Diversity, Equity, and Inclusion programs. ................................................................................................................ 8

      C.    EPA's priorities changed with the new Presidential Administration, and EPA terminated grants that no longer aligned with the new administration's priorities. 9

III.  LEGAL FRAMEWORK ............................................................................................... 9

      A.    Federal Courts are courts of limited subject matter jurisdiction. .......................... 9

      B.    A preliminary injunction is an extraordinary remedy. ......................................... 10

IV.   ARGUMENT .............................................................................................................. 10

      A.    Plaintiffs' grant termination challenge falls under the Tucker Act, depriving this Court of subject matter jurisdiction. .................................................................... 11

            1.    Plaintiffs' challenge to their grant terminations is a contract-based action subject to the exclusive jurisdiction of the Court of Federal Claims. ........ 11

                  a.    The source of Plaintiffs' rights is a contract. ................... 12

1

        b.      The relief Plaintiffs seek is monetary. ............................. 15

    2.      Alleging First Amendment violations does not alter the fundamental contractual nature of Plaintiffs' claims. .................................................. 17

    3.      Plaintiffs' *ultra vires* allegations do not defeat Tucker Act jurisdiction. . 18

B.     Plaintiffs are not entitled to a preliminary injunction because they are unlikely to succeed on the merits of their claim. ..................................................... 20

    1.      The grant terminations did not violate the Clean Air Act because the Act provides EPA discretion to choose, or change, the recipients and activities of grants, nor does it add additional limits on EPA's termination power. 20

    2.      The First Amendment does not restrict the grant terminations, because the Government is allowed to condition federal funding on compliance with policy priorities. ....................................................................... 22

    3.      The grant terminations were not arbitrary or capricious........................... 23

    4.      The grant terminations were discretionary and thus fall outside the scope of judicial review under the APA................................................................. 25

    5.      If EPA failed to provide sufficient reasoning for terminating Plaintiffs' grants or ran afoul of OMB regulations, the remedy under the APA is remand, not reinstatement. ........................................................................ 27

C.     Plaintiffs cannot establish irreparable harm......................................................... 27

D.     The balance of equities and public interest do not clearly favor Plaintiffs........... 29

E.     A meaningful bond is appropriate to protect the Government's interests. ........... 30

V.    CONCLUSION............................................................................................................... 31

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                      **Page(s)**

*Advanced Res. Int'l, Inc. v. Tri-Star Petroleum Co.*,
  4 F.3d 327 (4th Cir. 1993) ............................................................. 28-29

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*
  570 U.S. 205 (2013) ......................................................................... 22-23

*AIDS Vaccine Advocacy Coal. v. U.S. Dept. of State, No. 25-cv-402*,
  2025 WL 752378 (D.D.C. Mar. 10, 2025) ........................................ 27

*Am. Sci. & Eng'g, Inc. v. Califano*,
  571 F.2d 58 (1st Cir. 1978) ............................................................. 18

*Americopters, LLC v. United States*,
  95 Fed. Cl. 224 (2010) ................................................................... 18, 19

*Ass'n of Jewish Camp Operators v. Cuomo*,
  470 F. Supp. 3d 197 (N.D.N.Y. 2020) ........................................... 30

*Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*,
  501 U.S. 1301 (1991) ..................................................................... 29

*Bevevino v. United States*,
  87 Fed. Cl. 397 (2009) ................................................................... 18

*Portsmouth Redev. & Hous. Auth. v. Pierce*,
  706 F.2d 471 (4th Cir. 1983) ............................................ 11-12, 15, 18

*Columbus Reg'l Hosp. v. United States*,
  990 F.3d 1330 (Fed. Cir. 2021) ..................................................... 12, 13

*Cuomo v. U.S. Nuclear Reg. Comm'n*,
  772 F.2d 972 (D.C. Cir. 1985) ....................................................... 28

*Dennis Melancon, Inc. v. City of New Orleans*,
  703 F.3d 262 (5th Cir. 2012) ......................................................... 29

*Dept. of Ed. v. California*,
  604 U.S. – (2025) .......................................................... 14, 15, 29, 31

*Direx Israel, Ltd. v. Breakthrough Med. Corp.*,
  952 F.2d 802 (4th Cir. 1991) ......................................................... 27

*Evans v. B.F. Perkins Co.*,
  166 F.3d 642 (4th Cir. 1999) ......................................................... 9, 10

*Eyherabide v. United States*,
  345 F.2d 565 (Ct. Cl. 1965) ........................................................... 19

*Fed. Aviation Admin. v. Cooper*,
  566 U.S. 284 (2012) ................................................................................ 11

*Fed. Commc'ns Comm'n v. Prometheus Radio Project*,
  592 U.S. 414 (2021) .......................................................................... 24, 27

*Frazier v. Prince George's Cnty.*,
  86 F.4th 537 (4th Cir. 2023) ................................................................. 10

*Ganiszewski v. Austin, No. 23-cv-2195-BAH*,
  2024 WL 4227759 (D. Md. Sept. 17, 2024) ......................................... 15

*Ginsberg v. United States*,
  707 F.2d 91 (4th Cir. 1983) ................................................................... 18

*Gonzaga Univ. v. Doe*,
  536 U.S. 273 (2002) ............................................................................... 21

*Great-West Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002) ......................................................................... 15, 28

*Henderson ex rel. Henderson v. Shinseki*,
  562 U.S. 428–35 (2011) ......................................................................... 10

*Hoffler v. Mattis*,
  677 Fed. Appx. 119 (4th Cir. 2017) ...................................................... 24

*Ingersoll-Rand Co. v. United States*,
  780 F.2d 74–77 (D.D.C. 1985) .............................................................. 14

*James v. Caldera*,
  159 F.3d 573 (Fed. Cir. 1998) ......................................................... 15, 16

*Leathers v. Medlock*,
  499 U.S. 439 (1991) ............................................................................... 22

*Lincoln v. Vigil*,
  508 U.S. 182 (1993) ......................................................................... 25, 26

*Marsh v. Or. Nat. Res. Council*,
  490 U.S. 360 (1989) ............................................................................... 23

*Megapulse, Inc. v. Lewis*,
  672 F.2d 959 (D.C. Cir. 1982) .......................................................... 12, 14

*Miranda v. Garland*,
  34 F.4th 338 (4th Cir. 2022) ................................................................. 29

*Nat. Res. Def. Council, Inc. v. Envtl. Prot. Agency*,
  16 F.3d 1395 (4th Cir. 1993) ................................................................. 23

*Nken v. Holder*,
556 U.S. 418 (2009) ................................................................ 10, 29

*Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*,
556 F.3d 177 (4th Cir. 2009) ................................................ 24

*Palomino v. Fed. Bur. of Prisons*,
408 F. Supp. 2d 282 (S.D. Tex. 2005) .................................. 21

*Perez v. Mortg. Bankers Ass'n*,
575 U.S. 92 (2015) ................................................................ 24

*Randall v. United States*,
95 F.3d 339 (4th Cir. 1996) .................................................. 16

*Robbins v. U.S. Bureau of Land Mgmt.*,
438 F.3d 1074 (10th Cir. 2006) ............................................ 16

*Rostker v. Goldberg*,
448 U.S. 1306 (1980) ............................................................ 29

*Rust v. Sullivan*,
500 U.S. 173 (1991) .............................................................. 22

*San Juan City Coll. v. United States*,
391 F.3d 1357 (Fed. Cir. 2004) ............................................ 12

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422–31 (2007) .......................................................... 9

*Spectrum Leasing Corp. v. United States*,
764 F.2d 891 (D.C. Cir. 1985) ................................ 11, 13, 14, 16

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83–102 (1998) ..................................................... 9, 10

*Students for Fair Admissions, Inc. v. President and Fellows of Harvard Coll.*,
600 U.S. 181 (2023) .............................................................. 30

*U.S. Conf. of Catholic Bishops v. U.S. Dept. of State, No. 1:25-cv-00465
(TNM), 2025 WL 763738 (D.D.C. Mar. 11, 2025)* ......................... 15, 16

*Va. Carolina Tools, Inc. v. Int'l Tool Supply, Inc.*,
984 F.2d 113 (4th Cir. 1993) ................................................ 28

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
435 U.S. 519 (1978) .............................................................. 24

*Wells Am. Corp. v. Ziff-Davis Pub. Co., a Div. of Ziff Commc'ns Co.*,
900 F.2d 258 (4th Cir. 1990) ................................................ 28

*Williams v. United States*,
    50 F.3d 299 (4th Cir. 1995) ................................................................ 10

*Winter v. Nat. Res. Def. Council*,
    555 U.S. 7 (2008) ................................................................ 10, 27

*Ysursa v. Pocatello Educ. Ass'n*,
    555 U.S. 353 (2009) ................................................................ 22

**Statutes**

5 U.S.C. § 701 ................................................................................ 25

5 U.S.C. § 702 ................................................................................ 11

28 U.S.C. § 1491 ................................................................ 11, 12, 15

42 U.S.C. § 1983 ................................................................................ 21

42 U.S.C. § 7438 ................................................ 19, 7, 8, 19, 21, 22, 26

**Rules**

Fed. R. Civ. P. 65 ................................................................................ 30

**Other**

2 C.F.R. § 200.340 ................................................ 9, 15, 16, 19, 20, 24, 26

## I.    <u>INTRODUCTION</u>

This Court should deny Plaintiffs' motion for the extraordinary relief of a preliminary injunction.  First, this Court lacks jurisdiction over Plaintiffs' request to reinstate their terminated federal grant awards, which properly falls under the Tucker Act and the Court of Federal Claims' exclusive jurisdiction.  Second, Plaintiffs are unlikely to succeed on the merits.  Third, Plaintiffs have not shown that irreparable harm is likely in the few months it would take to properly litigate this matter.  Fourth, the balance of equities and public interest do not favor Plaintiffs.  Finally, if the Court does grant a preliminary injunction, it should follow the Supreme Court's guidance and impose a meaningful bond to cover the amount at stake in this litigation.

## II.    <u>BACKGROUND FACTS</u>

### A.    **The Clean Air Act does not require the EPA to fund specific grants.**

This case arises from EPA's distribution of grant money.  For Fiscal Year 2022, Congress appropriated a total of three billion dollars to the Administrator of the EPA "to award grants . . . that benefit disadvantaged communities, *as  defined by the Administrator*."  42 U.S.C. § 7438(a), (b)(1) (emphasis added).  This Congressional appropriation contains no guarantees of funding to any particular grant recipient.  *Id.*  Nor does it provide specific limits on the Administrator's ability to terminate grants or restrict the Administrator's ability to redefine which communities are considered disadvantaged.  *Id.*  In fact, it explicitly delegates to the Administrator the power to define disadvantaged communities and award grants accordingly.  42 U.S.C. § 7438(b)(1).

In 2023, during the Biden Administration, EPA established the Thriving Communities Grantmaking Program to award the Congressionally appropriated funds.  ECF 2-1 at 11.  The Grantmaking Program awarded grants to regional "Grantmakers" who in turn awarded subgrants to "community-based environmental protection projects."  *Id.* at 11–12.  The instant Plaintiffs are three entities that received Thriving Communities Grantmaking Program grants as Grantmakers.

*Id.* at 15. Plaintiffs were each awarded two separate awards: an initial award and a subsequent award. ECF 2-1 at 12–13. Plaintiffs' contractual relationship with EPA is governed by a Cooperative Agreement containing "General Terms and Conditions issued by EPA to govern its grants." *Id.* The initial awards are governed by the General Terms and Conditions applying to grants awarded October 1, 2023, or later, which allow EPA to unilaterally terminate the award "[i]f the award no longer effectuates the program goals or agency priorities." *Id.* at 13–14, 16 (alteration in original) (quoting ECF 2-13 at 3–4).[1] An award may no longer effectuate program goals or agency priorities if, based on EPA's determination, "the objectives of the award are no longer consistent with funding priorities for achieving program goals." *Id.* at 17.

**B.    More than seventy-seven million people voted for President Trump, who promised to overhaul federal spending and eliminate Diversity, Equity, and Inclusion programs.**

President Donald Trump swept into office after he openly and fervently campaigned on the promise to end diversity, equity, and inclusion in all its forms. *See, e.g.*, Alexis Agathocleous et al., *Trump on DEI and Anti-Discrimination Law*, ACLU.org, at 2 (Jul. 2, 2024), https://www.aclu.org/publications/trump-on-dei-and-anti-discrimination-law ("The 2024 Trump campaign . . . has promised . . . to eradicate both public and private diversity, equity, and inclusion (DEI) policies); *id.* ("Trump has promised to cut federal funding for schools with curricula that touch on these 'disfavored' subjects. . . ."); Jessica Guynn, *RIP DEI? The war on 'woke' America has a new commander-in-chief*, USAtoday.com (Nov. 22, 2024), https://www.usatoday.com/story/money/2024/11/22/rip-dei-donald-trump-

---

[1]    Plaintiffs' subsequent grants are governed by the General Terms and Conditions applying to grants awarded July 1, 2024 or later, which include a termination provision limiting terminations to substantial fraud, waste, or abuse. *See, e.g.*, ECF 2-17 at 30. The subsequent grants have not been terminated, but have been put on an administrative pause. As of the date of filing, the agency is still obtaining information regarding the alleged suspension of access to the subsequent awards.

president/76116276007 ("On the campaign trail, Donald Trump promoted the idea that white Americans were targets of racism and made reversing Joe Biden's 'woke takeover' of Washington a priority of his second term in office. . . . On the chopping block: [DEI programs]."). The President's DEI agenda was no secret to the seventy-seven million voters who enthusiastically cast votes for him, or to the ninety million voters who did not vote at all.

### C. EPA's priorities changed with the new Presidential Administration, and EPA terminated grants that no longer aligned with the new administration's priorities.

Approximately one month after President Trump took office, EPA terminated Plaintiffs' initial Thriving Communities Grantmaking Programs grants citing to the terms of "the Cooperative Agreement governing the organization's initial grant" and federal regulations governing grant termination. ECF 2-1 at 19 (citing 2 C.F.R. § 200.340). The termination letters provided several paragraphs of explanation identifying EPA's priority "to eliminate discrimination in all programs" and citing to the EPA Administrator's determination that DEI programs, including "'environmental justice' initiatives . . . conflict with the Agency's policy of prioritizing merit, fairness, and excellence." *Id.* at 19–20. EPA did not terminate Plaintiffs' subsequent grant awards.

## III.  <u>LEGAL FRAMEWORK</u>

### A. Federal Courts are courts of limited subject matter jurisdiction.

Before a court may rule on the merits of a claim, it must first determine if "it has the jurisdiction over the category of claim in suit (subject [] matter jurisdiction)." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1998)). The burden of proving subject matter jurisdiction rests with the plaintiff. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). The requirement that a plaintiff establish subject matter jurisdiction "as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without

exception." *Steel Co.*, 523 U.S. at 95 (internal quotation omitted). In determining whether subject matter jurisdiction exists "as a threshold matter," *id.*, a court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment," *Evans*, 166 F.3d at 647; *see also Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (holding that a court may consider exhibits outside pleadings). Challenges to the Court's subject matter jurisdiction "may be raised at any time," even after losing at trial and even if a party "previously acknowledged the trial court's jurisdiction." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434–35 (2011).

**B.    A preliminary injunction is an extraordinary remedy.**

A preliminary injunction is "extraordinary" relief that may "only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22, 24 (2008). Plaintiffs must satisfy four elements to show entitlement to a preliminary injunction: first, they must show that they are likely to succeed on the merits; second, that they will likely experience irreparable harm unless the court grants relief; third, that the balance of equities weighs in their favor; and fourth that an injunction is in the public interest. *Frazier v. Prince George's Cnty.*, 86 F.4th 537, 543 (4th Cir. 2023). The last two factors – balance of equities and the public interest – "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

**IV.    <u>ARGUMENT</u>**

The Court should decline to consider Plaintiffs' motion because the entire Complaint is subject to the exclusive jurisdiction of the Court of Federal Claims pursuant to the Tucker Act. If the Court determines it does have jurisdiction, Plaintiffs are not entitled to a preliminary injunction because they are unlikely to succeed on the merits of their claims, they have not established irreparable harm, and the balance of equities does not weigh in their favor.

A.    **Plaintiffs' grant termination challenge falls under the Tucker Act, depriving this Court of subject matter jurisdiction.**

Because the essence of this complaint is monetary, it falls under the Tucker Act and this Court lacks subject matter jurisdiction.  To sue a federal agency, a plaintiff must identify an express waiver of sovereign immunity in the text of a federal law and show that its claim falls within the waiver's scope.  *See Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 290 (2012) ("a waiver of sovereign immunity must be 'unequivocally expressed' in statutory text").  Here, Plaintiffs rely on the APA, which includes a limited waiver of sovereign immunity for claims "seeking relief other than money damages."  5 U.S.C. § 702.  The APA's limited waiver does not extend to this action because Plaintiffs' Complaint seeks to restore funding pursuant to the terms and conditions of a grant agreement.  Under these circumstances, relief under the APA is inappropriate and Plaintiffs' claim instead must be brought under the Tucker Act.  28 U.S.C. § 1491.  Because the Court of Federal Claims has exclusive jurisdiction over claims brought under the Tucker Act, this Court does not have subject matter jurisdiction to issue a preliminary injunction.  28 U.S.C. § 1491(a)(1).

1.    **Plaintiffs' challenge to their grant terminations is a contract-based action subject to the exclusive jurisdiction of the Court of Federal Claims.**

Where a party asks the Court to restore millions of dollars in terminated grant funding, the Court of Federal Claims has exclusive jurisdiction.  *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 895 (D.C. Cir. 1985) ("Congress intended the jurisdiction and remedies of the Tucker Act to be exclusive in cases based on government contracts.").  The Tucker Act provides that the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded" on "any express or implied contract with the United States." 28 U.S.C. § 1491(a).  Where such a claim "seek[s] monetary relief in excess of $10,000," the Tucker Act "vest[s] subject matter jurisdiction exclusively in the Claims Court."  *Portsmouth*

*Redev. & Hous. Auth. v. Pierce*, 706 F.2d 471, 473 (4th Cir. 1983).  *See also* 28 U.S.C. § 1491(a)(1).  Because this claim is based on an express contract with the United States and seeks monetary relief in the form of millions of dollars in restored grant funding, the Tucker Act applies.

Courts apply a two-part test to determine whether the Tucker Act applies to Plaintiffs' claims, considering "the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought."  *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982).  Where the source of rights is a contract and the type of relief is monetary, a claim falls under the Tucker Act.  *Id.*  Here, both prongs indicate that the Tucker Act applies.

### a.    The source of Plaintiffs' rights is a contract.

Without the terms and conditions of Plaintiffs' grant agreements, they would have no right to relief.  As a result, the source of their rights is a contract with the EPA.

Courts have routinely held that grants are contracts under the Tucker Act, holding, "grant agreements [are] contracts when the standard conditions for a contract are satisfied."  *Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1338 (Fed. Cir. 2021); *see also San Juan City Coll. v. United States*, 391 F.3d 1357, 1360-62 (Fed. Cir. 2004) (treating a "Program Participation Agreement" and related grants under the Higher Education Act as a contract).  The Federal Circuit has held that "grant agreements [are] contracts when the standard conditions for a contract are satisfied, including that the federal entity agrees to be bound."  *Columbus*, 990 F.3d at 1338. Courts "apply the traditional four-part test for the existence of a government contract:  (1) mutuality of intent to contract; (2) offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States."  *Id.* at 1339.

There can be no genuine dispute that the grants at issue here satisfied these elements.  EPA selected Plaintiffs to be regional Grantmakers, Plaintiffs accepted, EPA and Plaintiffs mutually

agreed into binding grant terms and conditions, and EPA awarded money in exchange for performance of the grant program from Plaintiffs.  ECF 2-1 at 11–19.

Where plaintiffs base their right to relief on the government's violation of the terms of grant awards, the source of rights is the grant agreements.  *Solutions in Hometown Connections v. Noem*. No. 25-cv-885-LKG, Doc. 46 at 16 (D. Md. Apr. 14, 2025) (attached as ECF 22-2) (finding that plaintiffs relied on terminated grants to establish standing and show departure from required procedures for grant termination).  Finding lack of jurisdiction in a similar grant termination case, Judge Griggsby noted that, although the plaintiffs' APA claim alleged violations of various regulations, only the plaintiffs' grant agreements obligated the government to follow those regulations as to those plaintiffs.  *Id.* at 16–18 ("Given this, the Court is not persuaded by the Plaintiffs' argument that the source of their APA claims in this case is statutory, regulatory and constitutional in nature.").

The same applies here.  Plaintiffs repeatedly base their claims on violations to the terms and conditions of their grant awards.  *See, e.g.*, ECF 2-1 at 13–15, 37–39.  They attach those terms and conditions to their motion and ask the Court to examine and interpret those agreements.  *See, e.g.*, ECF Nos. 2-4, 2-5, 2-7, 2-10.  They also attach EPA's General Terms and Conditions, which are only made applicable to Plaintiffs because of their grant agreements.  ECF 2-13 (General Terms and Conditions); ECF 2-1 at 13 ("[E]ach Cooperative Agreement references General Terms and Conditions issued by EPA to govern its grants").

Although Plaintiffs may claim that they base their right to relief on the EPA's alleged violation of law, this argument lacks teeth.  Even alleging abuse of the law does not bring a claim out of the Tucker Act's purview where the alleged statutory violations do not provide a "substantive right to the remedy" a plaintiff seeks.  *Spectrum*, 764 F.2d at 894.  Instead, where the

Government violates a statute but "[t]he right to payments is created in the first instance by the contract," the claim is based in contract and falls within the Tucker Act. *Id.* (holding government's violation of the Debt Collection Act did not entitle plaintiff to its requested payments or money owed, but only the contract between plaintiff and the government provided that entitlement) *with Megapulse*, 672 F.2d at 969 (holding that plaintiff's claim that government acted beyond the scope of its statutory authority did not fall under Tucker Act purview because the plaintiff "has gone to great lengths to demonstrate that it is not relying on the contract at all" and "does not claim breach of contract"). Similarly, *Ingersoll-Rand* applied the *Megapulse* framework to determine whether an APA claim fell under the Contract Disputes Act where the plaintiff claimed the government's termination of a contract for "convenience" was arbitrary and capricious in violation of the APA. *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 75, 76–77 (D.D.C. 1985). There, the Court held that where "[t]he contract included a termination-for-convenience clause" that the government invoked to terminate the contract, a challenge to the termination was a contractual dispute. *Id.* at *78 ("That the termination also arguably violates certain other regulations does not transform the action into one based solely on those regulations.").

In this case, not only did the EPA act consistently with the law, but Plaintiffs cite to no statute that gives them any substantive rights to relief independent from their grant agreements. *See also* Section IV.B.1–2 (arguing EPA's grant terminations did not violate the Clean Air Act or run afoul of the First Amendment). As a result, the grants provide the source of Plaintiffs' rights.

The Supreme Court recently addressed this issue. *Dept. of Ed. v. California*, 604 U.S. ___, 1 (2025) (per curiam). The *California* plaintiffs brought an Administrative Procedure Act (APA) challenge to the Government's termination of their grants, just like the instant Plaintiffs. *Id.* The District Court entered a temporary restraining order (TRO) "enjoining the Government from

terminating" the grants and essentially reinstating the grants.  *Id.*  The Supreme Court then granted the Government's emergency application to vacate entry of the TRO.  *Id*.  In so doing, the Court found the Government was likely to establish that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money" pursuant to a grant.  *Id.* at 2 (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002).  The Court held that the Government was likely to show that "the Tucker Act grants the Court of Federal Claims jurisdiction" over such suits.  *Id.* (citing 28 U.S.C. § 1491(a)(1).[2]  The instant case is indistinguishable from *California* in any meaningful sense.  Thus, this Court lacks jurisdiction over Plaintiffs' claims.

As a result, the Tucker Act governs the grants at issue in this lawsuit.

### b.    The relief Plaintiffs seek is monetary.

Courts have consistently held that an APA claim that actually seeks monetary relief is in essence a claim for monetary damages exceeding $10,000.  *See, e.g.*, *Great-West*, 534 U.S. at 210; *Portsmouth*, 706 F.2d at 474 (4th Cir. 1983) (vacating district court order); *Ganiszewski v. Austin*, No. 23-cv-2195-BAH, 2024 WL 4227759, at *9 (D. Md. Sept. 17, 2024).  To determine whether a claim seeks monetary damages, courts look beyond the label a plaintiff gives to the relief requested. *James v. Caldera*, 159 F.3d 573, 579 (Fed. Cir. 1998).

Challenges to agreements terminated under 2 C.F.R. § 200.340 are monetary where a plaintiff "wants the Government to keep paying up."  *U.S. Conf. of Catholic Bishops v. U.S. Dept. of State*, No. 1:25-cv-00465 (TNM), 2025 WL 763738 (D.D.C. Mar. 11, 2025).  Where an action "seeks the classic contractual remedy of specific performance," only the Court of Federal Claims

---

[2]    *But see* Mem. and Order, *Woonasquatucket River Watershed Council v. U.S. Dept. of Agric.*, 1:25-cv-00097-MSM-PAS, Doc. 45 (D.R.I. Apr. 15, 2025) (declining to follow *California*).

may resolve the dispute. *Id.* (quoting *Spectrum*, 764 F.2d at 894. The District Court for the District of Columbia recently dismissed a similar complaint for lack of subject matter jurisdiction where the plaintiff's contract was terminated pursuant to 2 C.F.R. § 200.340. *See generally Catholic Bishops*, 2025 WL 763738. The court held that it "lacks the power" to "cancel the termination, pay money due, and reinstate the contracts." *Id.* at 12. Judge Griggsby came to the same conclusion in another grant termination case. Mem. Op., *Solutions in Hometown Connections v. Noem.* No. 25-cv-885-LKG, Doc. 46 at 15 (D. Md. Apr. 14, 2025) (attached as ECF 22-2). There, Judge Griggsby found that even though Plaintiffs framed their claims as an APA challenge, the essence of their grant termination claim was monetary. *Id.* at 18–20.

Plaintiffs seek precisely such avoidant framing here. Despite reference to the APA and the Constitution, the heart of Plaintiffs' desired remedy is monetary. They seek to reinstate their initial awards and unfreeze subsequent awards, which will be used on monetary expenditures. *Id.* at 39, 41–42. Plaintiffs describe those expenditures in detail in both their motion and the accompanying declarations. ECF 2-1 at 42–48.

But even where a complaint seeks only equitable relief on its face, courts still consider the "essence" of the claim to decide if it is monetary or not. *Randall v. United States*, 95 F.3d 339, 347 (4th Cir. 1996). *See also James*, 159 F.3d at 579 ("Our inquiry, however, does not end with the words of the complaint, however instructive they may be, for we still must look to the true nature of the action in determining the existence or not of jurisdiction." (internal quotation omitted)). Where a complaint effectively seeks "declaratory or injunctive relief . . . in the form of specific performance" against the government, Tucker Act jurisdiction is exclusive and "the APA thus does not waive sovereign immunity for such claims." *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1082 (10th Cir. 2006). Seeking grant reinstatement is specific performance.

Both the Supreme Court and the Fourth Circuit have signaled their intention to reverse district courts that exercise jurisdiction over grant termination cases under these circumstances. In addition to the *California* case discussed above, the Fourth Circuit recently granted the Government's motion to stay the District of Maryland's entry of a preliminary injunction in a grant termination case after the district court twice considered and rejected the Government's Tucker Act arguments. Order, *Amer. Assoc. of Coll. For Teacher Educ. v. McMahon*, No. 25-1281, Doc. 30 (4th Cir., Apr. 10, 2025) ("*AACTE*"). There can be no serious dispute that Plaintiffs' claims here mirror those in *AACTE* and *California*. Indeed, Plaintiffs cite to both cases repeatedly in support of their motion for preliminary injunction. *See, e.g.*, ECF 2-1 at 4 (table of authorities, listing both cases as "*passim*"), 9 (noting EPA's action "here is strikingly similar to" both *AACTE* and *California*).

The same result as in *California* should follow here – this Court has no subject matter jurisdiction and dismissal is mandatory. Plaintiffs' most likely counterarguments – the presence of constitutional claims and *ultra vires* allegations – are both unavailing. First, Constitutional claims do not negate Tucker Act jurisdiction. Second, there is no real dispute that the EPA did not act *ultra vires* because statute, regulation, and the grant terms and conditions gave EPA the authority to terminate grants.

### 2. Alleging First Amendment violations does not alter the fundamental contractual nature of Plaintiffs' claims.

Plaintiffs may argue that their First Amendment Claim should preclude application of the Tucker Act. This argument lacks merit. Claims fall under the Tucker Act even where they include Constitutional challenges. Where resolution of Constitutional claims is "peripheral to the core determination of whether a breach of contract had occurred," a claim is still monetary, still requests monetary relief, and is therefore subject to the Court of Federal Claims' exclusive jurisdiction.

*Am. Sci. & Eng'g, Inc. v. Califano*, 571 F.2d 58, 61 (1st Cir. 1978) (cited by *Ginsberg v. United States*, 707 F.2d 91, 93–94 (4th Cir. 1983), and *Portsmouth*, 706 F.2d at 474–75). Where Plaintiffs request enforcement of the allegedly breached agreements, courts find even Constitutional claims to come under the jurisdiction of the Tucker Act. *Id.*

Plaintiffs here demand a monetary remedy. They seek reinstatement of their grants, immediate access to funds, and continued payment of money obligated in the future. ECF 2-1 at 47 (asking the Court to "vacate and set aside the EPA's unlawful termination of their . . . grants," secure "access to subsequent grant funds," and "prohibit Defendants from terminating or suspending access to any of the organizations' . . . grants or freezing access to funding under any of the grants." Although Plaintiffs also request declaratory relief which the Court of Federal Claims could not grant, this request does not change the monetary character of their complaint or the exclusive nature of the Court of Federal Claims' jurisdiction. *Bevevino v. United States*, 87 Fed. Cl. 397, 407 (2009) ("Notwithstanding the request for declaratory relief, their suit primarily seeks money damages, and falls within this court's jurisdiction."). It is well-established that the inability of the Court of Federal Claims to "provide the precise relief requested is no grounds for denying its jurisdiction over the claim." *Ginsberg*, 707 at 93–94 (quoting *Am. Sci*, 571 F.2d at 62).

### 3.    Plaintiffs' *ultra vires* allegations do not defeat Tucker Act jurisdiction.

Nor can Plaintiffs escape Tucker Act jurisdiction by arguing that the agency acted "in excess of statutory authority" because their *ultra vires* arguments are meritless. ECF 1 at 24. Plaintiffs' allegation that EPA acted illegally is not sufficient to characterize EPA's action as *ultra vires*. *Am. Sci.*, 571 F.2d at 61.

A government agent's action is *ultra vires* if it is not "within the normal scope of an agent's duties." *Americopters, LLC v. United States*, 95 Fed. Cl. 224, 230–31 (2010). The distinction is between "conduct that is unauthorized and conduct that is authorized but unlawful for other

reasons." *Id.* at 231.  Where government agents are "mistaken in applying the law, but they were acting within the scope of their duties to interpret the law," they do not act *ultra vires*.  *See, e.g.*, *Eyherabide v. United States,* 345 F.2d 565, 570 (Ct. Cl. 1965) (holding government officials do not act without authorization "merely because they may have been mistaken, imprudent, or wrongful").

Here, there is no genuine dispute that the EPA had the authority to terminate Plaintiffs' grants.  The Clean Air Act allows the EPA Administrator to award grants based on his definition of a disadvantaged community,[3] and the Code of Federal Regulations permits grant termination "[i]f the award no longer effectuates the program goals or agency priorities."  42 U.S.C. § 7438(a), (b)(1); ECF 2-1 at 16 (alteration in original) (quoting ECF 2-13 at 3–4); 2 C.F.R. § 200.340. Plaintiffs argue that the EPA terminated their grants without properly following the procedures allowing them to do so.  ECF 2-1 at 23.  This does not amount to an *ultra vires* action.  Plaintiffs offer no support for their contention that "the Clean Air Act . . . afforded no discretion to the agency to terminate or suspend such grants on the basis of a new 'Agency priority' not to fund 'environmental justice.'"  *Id.*  To the contrary, the Clean Air Act leaves the award of grants up to the EPA Administrator's discretion and does not mandate that any particular organization receive grant money.  42 U.S.C. § 7438(a).  Moreover, the terms and conditions of Plaintiffs' initial grants allow EPA to terminate the grants if "EPA determines that the objectives of the award are no longer consistent with funding priorities for achieving program goals."[4]  Although Plaintiffs' subsequent

---

[3]    See Section IV.B.1 and 4 for additional discussion of the Administrator's discretion.

[4]    Plaintiffs appear to argue that the Terms and Conditions of their grants present three required termination elements, all of which must be satisfied before a termination is lawful.  ECF 2-1 at 13–14 (arguing that EPA "must 'obtain evidence that was not considered in making the award'" before it may terminate a grant).  This reading is fully at odds with the plain text of the grant terms and conditions.  The documents themselves list nonexclusive *examples* of situations

grants do not incorporate that same language, those subsequent grants have been suspended but not terminated.

Because Plaintiffs concede that EPA did have the authority to terminate their grants pursuant to the terms and conditions of those agreements and 2 C.F.R. 200.340, but argue that EPA exercised that authority illegally, they cannot show an *ultra vires* action and the Tucker Act still applies to their claims.

**B.    Plaintiffs are not entitled to a preliminary injunction because they are unlikely to succeed on the merits of their claim.**

Even if the Court exercises jurisdiction over this case, Plaintiffs are still not entitled to a preliminary injunction because they are unlikely to succeed on the merits of their claim. First, the EPA did not violate the Clean Air Act because the Act contains no specific requirements regarding which grantees should receive funds, nor does it limit EPA's ability to terminate grants. Second, there is no First Amendment infringement when the Government cancels a federal grant due to speech or activities within the scope of the grant. Third, the grant terminations were not arbitrary and capricious because EPA is permitted to terminate grants due to changes in agency priorities. Fourth, the Clean Air Act specifically gives the EPA Administrator discretion to define which disadvantaged communities should benefit from grants, making these terminations discretionary decisions outside the reach of the APA. Finally, even if EPA did violate the APA, the proper remedy is remand, not grant reinstatement.

**1.    The grant terminations did not violate the Clean Air Act because the Act provides EPA discretion to choose, or change, the recipients and**

---

that would allow EPA to terminate a grant award. ECF 2-13 at 4 ("Situations in which EPA *may* terminate an award under this provision *include* when…" (emphasis added)). The situations, some but not all of which reference new evidence, are not connected by a conjunctive. There is no documentary or logical basis for claiming that EPA may only terminate a grant if it "obtains evidence that was not considered in making the award." *Id.*

**activities of grants, nor does it add additional limits on EPA's termination power.**

Plaintiffs argue that EPA violated the Clean Air Act's appropriation of funding for environmental justice when it terminated their environmental justice grants. ECF 2-1 at 30–32. But the Clean Air Act does not go this far, providing only general appropriations for certain pollution and climate-related activities benefitting "disadvantaged communities," as defined by the EPA administrator, without additional limitations or restrictions on EPA's ability to terminate grants. 42 U.S.C. § 7438.

Where Congress does not appropriate funds to a specific recipient but rather appropriates funding "on a lump-sum basis," an agency still has the discretion "to allocate its resources elsewhere as it sees fit." *Palomino v. Fed. Bur. of Prisons*, 408 F. Supp. 2d 282, 291 (S.D. Tex. 2005). Although not directly on point, Supreme Court has considered whether Congressional appropriations give rise to a private right of action in suits under 42 U.S.C. § 1983. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 280 (2002). The Court has held that unless an appropriation "unambiguously conferred a mandatory benefit" that was "sufficiently specific," then it does not confer individual rights. *Id*.

Here, no language in the relevant provision of the Clean Air Act can be read to require EPA to disburse funds to the instant Plaintiffs as the only way to effectuate the statute. *See generally*, 42 U.S.C. § 7438. To the contrary, the Act gives the Administrator the power to define the meaning of "grants . . . that benefit disadvantages communities." 42 U.S.C. § 7438(b)(1). The legislative history of this provision underscores this lack of fixed meaning, as Tennessee Senator Marcia Blackburn observed in debate that the bill did not identify which "environmental justice communities" that would benefit from grants, allowing for political discretion. 168 Cong. Rec. S4154-01, 168 Cong. Rec. S4154-01, S4163. Moreover, the statutory provision does not displace

the EPA's existing regulatory power to terminate grants.  *Compare* 42 U.S.C. § 7438 *and, e.g.*, 20 U.S.C. § 1234c(1), 1232g(f) (Family Educational Rights and Privacy Act provisions restricting ability of the Secretary of Education to terminate funds).

Thus, Plaintiffs are unlikely to show that the EPA ran afoul of the Clean Air Act when it terminated their grants.

> **2.      The First Amendment does not restrict the grant terminations, because the Government is allowed to condition federal funding on compliance with policy priorities.**

Because the Government may engage in selective funding in support of its policy priorities without violating the First Amendment, Plaintiffs are not likely to succeed on their First Amendment challenge.

Government spending is not subject to traditional First Amendment scrutiny.  *Rust v. Sullivan*, 500 U.S. 173, 193 (1991).  Rather, "[t]he Government can, without violating the Constitution, selectively fund a program to encourage certain activities it believes to be in the public interest, without at the same time funding an alternative program which seeks to deal with the problem in another way."  *Id.* at 193 ("In so doing, the Government has not discriminated on the basis of viewpoint; it has merely chosen to fund one activity to the exclusion of the other.").

The Supreme Court has that the Government does not penalize, prohibit, restrict, or otherwise infringe on speech simply because it chooses not to pay for it. *See, e.g., Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 358 (2009) (explaining that government "is not required to assist others in funding the expression of particular ideas"); *Leathers v. Medlock*, 499 U.S. 439, 450 (1991) (government "is not required to subsidize First Amendment rights").  "As a general matter, if a party objects to a condition on the receipt of federal funding, its recourse is to decline the funds. This remains true when the objection is that a condition may affect the recipient's exercise of its First Amendment rights." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*

(*AID*), 570 U.S. 205, 213 (2013).  The Fourth Circuit recently reaffirmed this conclusion when it granted a stay in *National Association of Diversity Officers in Higher Education v. Trump* ("*NADOHE*"), finding the Government was likely to succeed on the merits of a First and Fifth Amendment challenge to grant termination-related provisions of a Presidential Executive Order. Order, *NADOHE*, No. 25-1189, Doc. 29, at 7 (4th Cir. Mar. 14, 2025) (Harris, C.J., concurring) ("Nor do the orders authorize the termination of grants based on a grantee's speech or activities outside the scope of the funded activities.  Rather, the 'Termination' provision directs the termination of grants . . . based only on the nature of the grant-funded activity itself.").[5]

Similarly here, the terminations do not reach "speech or activities outside the scope of the funded activities."  *Id.*  Plaintiffs make no allegation that the grant terminations were based on anything other than the nature of the grant programs themselves.  *See generally* ECF 2-1. Plaintiffs' speech-related arguments stem from their grant activity and the nature of their funded programs, not any outside activity.  *Id.* at 34, 36.  Because federal funding is a privilege and not a right, and because the funding terminations here related only to grant-funded activity, Plaintiffs are unlikely to succeed on their First Amendment claim.

### 3.    The grant terminations were not arbitrary or capricious.

Plaintiffs are unlikely to succeed on their APA claim, to the extent those claims are even cognizable.  *See* Section IV.A (arguing Tucker Act, not APA, governs Plaintiffs' claims). "Arbitrary and capricious" is a "narrow" standard of review in which EPA's action is presumed valid. *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989) (narrow standard); *Nat. Res. Def. Council, Inc. v. Envtl. Prot. Agency*, 16 F.3d 1395, 1400 (4th Cir. 1993) (presumed validity).  The

---

[5]    *But c.f. id.* ("What the Orders say on their face and how they are enforced are two different things.  Agency enforcement actions that go beyond the Orders' narrow scope may well raise serious First Amendment and Due Process concerns, for the reasons cogently explained by the district court.")

Court merely "consider[s] whether the agency considered the relevant factors and whether a clear error of judgment was made." *Hoffler v. Mattis*, 677 Fed. Appx. 119, 120 (4th Cir. 2017) (quoting *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009)). In other words, courts ask if "the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). The APA is not a mechanism for judicial policy revision, because "courts lack authority 'to impose upon [an] agency its own notion of which procedures are 'best' or most likely to further some vague, undefined public good.'" *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 102 (2015) (cleaned up) (quoting *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.,* 435 U.S. 519, 549 (1978)).

Federal regulations explicitly allow agencies to terminate grants for no other reason besides "an award no longer effectuates . . . agency priorities." 2 C.F.R. § 200.340. This language came from Office of Management and Budget (OMB) changes to Uniform Guidance in the year 2020. Guidance for Grants and Agreements, Published Doc. No. 2020-17468, 85 FR 49506 (Aug. 13, 2020), available at https://www.federalregister.gov/documents/2020/08/13/2020-17468/guidance-for-grants-and-agreements (last visited Mar. 11, 2025). The comments to this change to the Uniform Guidance note that the language is meant to allow "awarding agencies [to] prioritize ongoing support to Federal awards that meet program goals" and "terminate the Federal award" where it does not. *Id.*

Because Plaintiffs' "arbitrary and capricious" argument is likely to fail, preliminary injunction is further unwarranted.

4.    **The grant terminations were discretionary and thus fall outside the scope of judicial review under the APA.**

The Court's lack of subject matter jurisdiction constitutes necessary and sufficient grounds to vacate the Order and dismiss this case.  But the Court should also reconsider and vacate its decision because the challenged "agency action" is "committed to agency discretion by law" and therefore falls outside the scope of permissible judicial review under the APA.  5 U.S.C. § 701(a)(2).  The Court therefore lacks jurisdiction because the EPA's decisions here—which concerned how best to re-allocate funds to align with its policy objectives—were quintessential decisions committed to agency discretion by law.

In *Lincoln v. Vigil*, 508 U.S. 182 (1993), the Supreme Court held that the Indian Health Service's decision to discontinue a program it had previously funded and to instead reallocate those funds to other programs was committed to agency discretion by law and thus not reviewable under the APA's reasoned-decisionmaking standards.  *See id.* at 185–88.  The Court explained that the "allocation of funds from a lump-sum appropriation is another administrative decision traditionally regarded as committed to agency discretion," because the "very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way."  *Id.* at 192.

Indeed, "an agency's allocation of funds from a lump-sum appropriation requires 'a complicated balancing of a number of factors which are peculiarly within its expertise': whether its 'resources are best spent' on one program or another; whether it 'is likely to succeed' in fulfilling its statutory mandate; whether a particular program 'best fits the agency's overall policies'; and, 'indeed, whether the agency has enough resources' to fund a program 'at all.'"  *Id.* at 193.  "Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes."  *Id.*  But if the agency abides by the relevant statutes (and

whatever self-imposed obligations may arise from regulations or grant instruments), the APA "gives the courts no leave to intrude."  *Id.*

Here, EPA's terminations abided by applicable statutes, regulations, and the grant terms and conditions.  Congress explicitly delegated to the EPA Administrator the power to define which grants would "benefit disadvantaged communities."  42 U.S.C. § 7438.  The EPA Administrator exercised that power in terminating Plaintiffs' grants; their termination letters explained that the EPA Administrator exercised that Congressionally-delegated discretion to determine that the terminated grants "conflict with the Agency's policy of prioritizing merit, fairness, and excellence."  ECF 2-1 at 19–20.  The terminations were also consistent with the Office of Management and Budget's Uniform Grant Guidelines in the Code of Federal Regulations, which allows EPA to terminate grants solely because they are no longer consistent with agency priorities. 2 C.F.R. § 200.340.

Finally, the initial grants' terms and conditions themselves allow EPA to unilaterally terminate funding if "EPA determines that the objectives of the award are no longer consistent with funding priorities for achieving program goals."  ECF 2-13 at 4.  EPA not only terminated funding consistently with these guardrails, but also provided several paragraphs of clear and unambiguous explanation, noting that DEI initiatives and "environmental justice" as the previous administration defined it directly "conflict with the Agency's policy of prioritizing merit, fairness, and excellence in performing our  statutory functions" and thus "no longer effectuates[] Agency priorities."  ECF 2-1 at 20.

Because Plaintiffs are unlikely to show arbitrary and capricious action, their APA claim is unlikely to succeed.

> **5.      If EPA failed to provide sufficient reasoning for terminating Plaintiffs'
> grants or ran afoul of OMB regulations, the remedy under the APA is
> remand, not reinstatement.**

To the extent the Court considers granting a preliminary injunction, Defendants respectfully request the Court instead remand the matter back to EPA to provide a more detailed explanation for each grant termination on an expedited schedule.  Armed with a more grant-specific explanation, Plaintiffs could then determine whether they still wish to pursue legal action and the Court could then reconsider the matter with a more fulsome record.  Courts allowed for similar remands in other challenges to grant terminations.  *See, e.g.*, *Prometheus*, 592 U.S. at 422; *AIDS Vaccine Advocacy Coal. v. U.S. Dept. of State*, No. 25-cv-402, 2025 WL 752378, at *13 (D.D.C. Mar. 10, 2025).

> **C.      Plaintiffs cannot establish irreparable harm.**

Plaintiffs are not entitled to a preliminary injunction because they cannot show that they are likely to be irreparably harmed absent an injunction.  A preliminary injunction may not issue absent this showing.  *Winter*, 555 U.S. at 22.  Conclusory or speculative allegations do not establish a likelihood of irreparable harm.  *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991).  Here, Plaintiffs allege three categories of harm:  per se harm resulting from infringement on their First Amendment rights; "serious programmatic and operational harms;" and reputational harms.  ECF 2-1 at 43–46.  Plaintiff fails to establish likelihood of irreparable harm at every turn.

As discussed in Section IV.B.2 above, Plaintiffs have not experienced a First Amendment injury merely because the EPA terminated a grant for reasons based on the content of the grant itself.  The Fourth Circuit rejected an analogous argument about threats to speech posed by grant termination language in Presidential Executive Orders in *NADOHE*.  Order, *NADOHE*, No. 25-1189, Doc. 29, at 7 (4th Cir. Mar. 14, 2025) (Harris, C.J., concurring) (noting no First Amendment

infringement where funding termination was not threatened due to "speech or activities outside the scope of the funded activities"). Thus, there is no per se irreparable harm resulting from the violation of First Amendment rights.

Nor have plaintiffs established that their operational harms rise to the level of irreparability. "Loss of profits and of business opportunities" are not irreparable. *Wells Am. Corp. v. Ziff-Davis Pub. Co., a Div. of Ziff Commc'ns Co.*, 900 F.2d 258 (4th Cir. 1990). *See also Va. Carolina Tools, Inc. v. Int'l Tool Supply, Inc.*, 984 F.2d 113, 120 (4th Cir. 1993) ("[L]oss of distributor agreements, loss of sales, expenses incurred in relocation, injury to reputation, loss of profits, and loss of volume discounts—were not irreparable."). The Supreme Court found plaintiffs' similar allegations of harm in *California* were not irreparable where a loss in funding would not cause the organizations to stop operating. 604 U.S. __ at 2. The Court further observed that if the organizations chose to shut down their programs, "then any ensuing irreparable harm would be of their own making." *Id.* (noting such costs are "self-imposed" (quoting *Cuomo v. U.S. Nuclear Reg. Comm'n*, 772 F.2d 972, 977 (D.C. Cir. 1985) (per curiam)). Similarly here, Plaintiffs aver that they are using alternative funding to continue running their programs. ECF 2-1 at 42. They also note that their programs "will soon cease to exist *in their envisioned form* and likely altogether," underscoring both the speculative nature of any existential threat and indicating that the programs may still continue in a newly-envisioned form. ECF 2-1 at 42.

Moreover, Plaintiffs' allegation of reputational harm is speculative and assumes that their subgrantees will blame Plaintiffs, and not EPA, for the grant terminations. ECF 2-1 at 43. This is a tenuous conclusion at best. It is equally likely that Plaintiffs will construct a more positive narrative for their partner organizations. *See Advanced Res. Int'l, Inc. v. Tri-Star Petroleum Co.*,

4 F.3d 327, 331 (4th Cir. 1993) (where concerns about reputational harm stem from unproven events or assumptions, the harm is speculative).

Ultimately, the gravamen of Plaintiffs' claim is monetary and, if they prevail, they will receive funds to the extent required by law. *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (the "possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, [weighs] heavily against a claim of irreparable harm") (citation omitted), *cert. denied*, 569 U.S. 994 (2013).

In contrast, the Supreme Court held that in grant termination cases like this one, the Government does suffer irreparable harm from the entry of a preliminary injunction. *California*, 604 U.S. at 2. As in *California*, Plaintiffs have made no representation that they will give potentially tens of millions of dollars back to the Government in the likely event they lose this litigation. Indeed, the opposite is true – Plaintiffs argue that they should not be required to post any kind of bond at all, or that they post a nominal bond of $100. ECF 2-1 at 48. This is approximately .001% of their initial $8 million grant and is hardly meaningful. *Id.* at 12–13.

### D. The balance of equities and public interest do not clearly favor Plaintiffs.

Plaintiffs must also show that the balance of equities and public interest weigh in their favor. These final two factors also weigh in the government's favor and compel denial of Plaintiffs' motion.

The balance of the equities and the public interest "merge when the Government is the opposing party." *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (quoting *Nken*, 556 U.S. at 435). To balance the equities, the Court considers "the relative harms to applicant and respondent, as well as the interests of the public at large." *Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1305 (1991) (Scalia, J., in chambers) (quoting *Rostker v. Goldberg*, 448 U.S. 1306, 1308 (1980) (Brennan, J., in chambers)). Irreparable harm to Plaintiffs

is not decisive.  *See Ass'n of Jewish Camp Operators v. Cuomo*, 470 F. Supp. 3d 197, 228–29 (N.D.N.Y. 2020) (finding irreparable harm to Plaintiffs from closure of overnight camps, but still finding important governmental interest weighed against preliminary injunction).

While Plaintiffs' Complaint and motion lay out the public interest in favor of an injunction, there are several compelling interests that weigh against an injunction.  First, the government and the public both have a compelling interest in ending discrimination.  In 2023, the Supreme Court recognized that educational policies or programs favoring one race – even a historically disadvantaged race – were not equitable but instead were discriminatory.  *Students for Fair Admissions, Inc. v. President and Fellows of Harvard Coll.*, 600 U.S. 181, 206 (2023) ("*SFFA*").  EPA must be allowed to act upon this binding interpretation of federal civil rights laws.

Second, although many Americans support diversity, equity, and inclusion programs, many others do not.  *SFFA*, 600 U.S. at 275–76 (Thomas, J., concurring) (noting that DEI is responsible for "creating new prejudices and allowing old ones to fester," causing some to "resent members of what they perceive to be favored races, believing that the successes of those individuals are unearned").  The public interest in ending DEI must be weighed against the preference of those who wish to keep it.

**E.**    **A meaningful bond is appropriate to protect the Government's interests.**

Defendants thus request that any relief be accompanied by a bond under Fed. R. Civ. P. 65(c), which provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." A bond is appropriate here given that any preliminary relief would potentially mandate that the Executive spend money that may not be recouped once distributed.

The Supreme Court has acknowledged that, in grant termination cases like this one, the Government may be "unlikely to recover the grant funds once they are disbursed." *California*, 604 U.S. at 2 (noting district court declined to impose bond).  There is approximately $60 million at issue in this case.  ECF 2-1 at 21–13.  Thus, Defendants respectfully ask the Court to impose a bond equal to the amount of funding remaining on the terminated initial grants.

## V.    **CONCLUSION**

For the foregoing reasons, the Court should deny the motion.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

By:  _____/s/_____
Molissa H. Farber (802255)
Assistant United States Attorney
36 S. Charles St., 4th Floor
Baltimore, Maryland 21201
(410) 209-4862
Molissa.Farber@usdoj.gov
*Counsel for Defendants*