## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| SOLUTIONS IN HOMETOWN CONNNECTIONS, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| KRISTI NOEM, *et al.*, | ) ) ) |
| Defendants. | ) ) |

Civil Action No. 25-cv-00885-LKG

Dated:  April 14, 2025

## MEMORANDUM OPINION

### I.    INTRODUCTION

In this civil action, the Plaintiffs, Solutions in Hometown Connections; Central American Resource Center; Coalition for Humane Immigrant Rights; Community Center for Immigrants, Inc.; English Skills Learning Center; Michigan Organizing Project doing business as Michigan United; Hebrew Immigrant Aid Society and Council Migration Services of Philadelphia doing business as HIAS Pennsylvania; Immigrant Law Center of Minnesota; and Instituto del Progreso Latino, challenge the decisions by Homeland Security Secretary Kristi Noem (the "Secretary") to indefinitely freeze, and to ultimately terminate, certain grants (the "Grants") issued to them by the United States Citizenship and Immigration Services ("USCIS") to, among other things, assist lawful permanent residents with learning English, studying for the citizenship test and applying to be naturalized citizens.  ECF No. 1.  The Plaintiffs have filed a motion for temporary restraining order, preliminary injunction and Administrative Procedure Act ("APA") stay, pursuant to Fed. R. Civ. P. 65 and 5 U.S.C. § 705.  ECF No. 30.  The motion is fully briefed.  ECF Nos. 30, 32 and 36; *see also* ECF Nos. 31, 40 and 42.

The Court held a hearing on this motion on April 8, 2025.  ECF No. 43.  For the reasons that follow, and for those stated during the April 8, 2025, hearing, the Court: (1) **DENIES** the Plaintiffs' motion as to Plaintiffs Solutions In Hometown Connections; Central American Resource Center; Coalition For Humane Immigrant Rights; Community

Center for Immigrants, Inc.; English Skills Learning Center; Michigan Organizing Project, doing business as Michigan United; Hebrew Immigrant Aid Society and Council Migration Service of Philadelphia; and Instituto del Progreso Latino; (2) **HOLDS-in-ABEYANCE** the Plaintiffs' motion as to Plaintiff Immigrant Law Center of Minnesota; and (3) **DIRECTS** the parties to **FILE** a joint status report stating their respective views regarding how the matter should proceed **on or before April 15, 2025**.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A.  Factual Background

In this civil action, the Plaintiffs challenge the decisions of Homeland Security Secretary Kristi Noem to indefinitely freeze, and to ultimately terminate, the Grants to assist lawful permanent residents with learning English, studying for the citizenship test and applying to be naturalized citizens.  ECF No. 1.  Specifically, the Plaintiffs' assert the following claims in the complaint: (1) violation of the APA, arbitrary and capricious agency action, against Defendants Secretary Noem, Kika Scott, the Department of Homeland Security ("DHS") and USCIS (Count I); (2) violation of the APA, contrary to law, against Defendants Secretary Noem, Kika Scott, DHS and USCIS (Count II); (3) violation of separation of powers against all Defendants (Count III); (4) violation of the Due Process Clause of the Fifth Amendment of the United States Constitution, against all Defendants (Count IV); and (5) ultra vires against all Defendants (Count V).  *Id*.  As relief, the Plaintiffs request that, among other things, the Court: (1) declare that the Secretary's January 28, 2025, Memorandum (the "Noem Memorandum") freezing the Grants is unconstitutional and unlawful; (2) vacate and set aside the Noem Memorandum and the Defendants' actions to implement the Noem Memorandum; (3) temporarily restrain and preliminarily and permanently enjoin the Defendants from implementing the Noem

---

[1] The facts recited in this memorandum opinion are taken from the complaint; the Plaintiffs' motion for a temporary restraining order, preliminary injunction and APA stay; the memorandum in support thereof; the exhibits attached thereto; and the Defendants' response in opposition thereto. ECF Nos. 1, 30, 30-1, 30-3 and 32.

2

Memorandum; and (4) enjoin the Defendants from imposing any negative consequences on the Plaintiffs, or similarly situated organizations, for noncompliance with the terms of the Grants due to the Defendants' actions. *Id*. at Prayer for Relief.

<u>The Parties</u>

Plaintiff Solutions in Hometown Connections ("SHC") is a nonprofit located in Greenbelt, Maryland that provides immigration-related services such as English classes and naturalization assistance to refugees, asylees and other newly arrived immigrants. ECF No. 1 at ¶ 9.

Plaintiff Central American Resource Center ("CARECEN DC") is a Washington, D.C.- based nonprofit that offers assistance with naturalization applications and low-cost citizenship classes, including English-language learning, citizenship information sessions and workshops, citizenship tutoring and interview preparation. *Id*. at ¶ 10.

Plaintiff Coalition for Humane Immigrant Rights ("CHIRLA") is a Los Angeles California-based nonprofit that provides services such as citizenship instruction, screenings for naturalization eligibility, and legal assistance with the citizenship process. *Id*. at ¶ 11.

Plaintiff Community Center for Immigrants Incorporated ("CCI") is a Milwaukee, Wisconsin-based nonprofit providing immigration-related legal services and educational programming such as free citizenship classes, voter registration and education, English classes and affordable legal services. *Id*. at ¶ 12.

Plaintiff English Skills Learning Center ("ESLC") is a nonprofit located in West Valley City, Utah that offers English-language classes to about 800 students a year, from more than 86 different countries, with 120 trained and mentored community volunteers. *Id*. at ¶ 13.

Plaintiff Michigan Organizing Project, doing business as Michigan United, is a statewide organization of churches, labor and community groups that together provide low-cost immigration-related legal services throughout the state of Michigan, including free citizenship classes, English-as-a-Second Language classes and assistance applying for citizenship. *Id*. at ¶ 14.

3

Plaintiff Hebrew Immigrant Aid Society and Council Migration Service of Philadelphia, doing business as "HIAS Pennsylvania" ("HIAS PA"), is a nonprofit organization headquartered in Philadelphia, Pennsylvania that provides services such as legal representation for legal permanent residents seeking to naturalize, civics classes, English language education, employment orientation, intensive case management support for vulnerable immigrants, and resettlement services, including access to Social Security cards and community orientations.  *Id*. at ¶ 15.

Plaintiff Immigrant Law Center of Minnesota ("ILCM") is a nonprofit organization headquartered in St. Paul, Minnesota that provides services such as applications for citizenship, DACA renewals and support for non-US citizen survivors, refugees and children.  *Id*. at ¶ 16.

Plaintiff Instituto del Progreso Latino ("IDPL") is a nonprofit organization headquartered in Chicago, Illinois that provides services such as free citizenship, English and adult education classes, as well as helping residents navigate the application process to become U.S. citizens.  *Id*. at ¶ 17.

Defendant Secretary Kristi Noem is the Secretary of DHS.  *Id*. at ¶ 18

Defendant DHS is a Federal agency that is headquartered in Washington, D.C. that oversees, among other things, immigration and border security along with its component agencies, including USCIS.  *Id*. at ¶ 36.

Defendant USCIS is a component agency of DHS that is headquartered in Camp Springs, Maryland.  *Id*. at ¶¶ 18 and 21.

Defendant Kika Scott is a senior official performing the duties of the Director of USCIS.  *Id*. at ¶ 20.

Defendant Donald J. Trump is the President of the United States.  *Id*. at ¶ 22.

<u>The Citizenship And Integration Grant Program</u>

Congress created DHS and its component agencies—including USCIS—in the Homeland Security Act of 2002.  *See* Homeland Security Act of 2002, Pub. L. No. 107-296 (codified at 6 U.S.C. § 101 *et seq*.).  The Homeland Security Act also created the Office of

4

Citizenship within USCIS.  6 U.S.C. § 271(f)(1).  The Homeland Security Act provides that USCIS will "promot[e] instruction and training on citizenship responsibilities for aliens interested in becoming naturalized citizens of the United States, including the development of educational materials."  6 U.S.C. § 271(f)(2).

In 2009, the USCIS's Office of Citizenship created the Citizenship And Integration Grant Program ("CIGP").  ECF No. 30-1 at 2.  The goal of CIGP is to "expand the availability of high-quality citizenship preparation services for LPRs across the nation and to provide opportunities for immigrants to gain the knowledge and skills necessary to assimilate into the fabric of American society."  ECF No. 32 at 6.  Grant recipients under this program provide "English language and civics instruction, legal assistance with naturalization applications, and community space for immigrant integration."  ECF No. 30-1 at 2.

The CIGP is authorized and funded through annual appropriations legislation enacted by Congress.  ECF No. 32 at 6.  Relevant to this case, Congress appropriated $25 million for CIPG in Fiscal Year 2023.  The appropriations language provides that:

> For necessary expenses of U.S. Citizenship and Immigration Services for Federal assistance for the Citizenship and Integration Grant Program, $25,000,000, to remain available until September 30, 2024.

Consolidated Appropriations Act of 2023, Pub. L. No. 117-328, 136 Stat. 4745 ("FY 23 Appropriations Act").  In Fiscal Year 2024, Congress also appropriated $25 million for CIGP and that appropriations statute provides that:

> For necessary expenses of U.S. Citizenship and Immigration Services for Federal assistance for the Citizenship and Integration Grant Program, $10,000,000, to remain available until September 30, 2025.

Further Consolidated Appropriations Act of 2024, Pub. L. No. 118-47, 138 Stat. 612 ("FY 24 Appropriations Act").  And so, CIGP distributes its funding by awarding various types of grants.  ECF No. 30-1 at 3.

5

The Plaintiffs' Grants

Eight of the nine Plaintiffs in this case—SHC, CARECEN DC, CHIRLA, CCI, ESLC, Michigan United, HIAS PA and IDPL—received CIGP Grants funded by the FY 23 Appropriations Act (the "FY 23 Plaintiffs"). *See* ECF No. 30-3 at J.R. 004 ¶ 6, J.R. 008 ¶ 5, J.R. 012 ¶ 5, J.R. 016 ¶ 6, J.R. 020-021 ¶ 9, J.R. 025 ¶ 7, J.R. 029 ¶ 4 and J.R. 042 ¶ 5. The Grants for the FY 23 Plaintiffs have a performance period of October 1, 2023, through September 30, 2025. *See* ECF No. 30-1 at 4; *see, e.g.*, ECF No. 32-1 at J.R. 0252. The FY 23 Plaintiffs allege that approximately $1,250,482 in Grant funds remains unpaid for these Grants. *See* ECF No. 30-3 at J.R. 005 ¶ 14, J.R. 009 ¶ 8, J.R. 013 ¶ 10, J.R. 017 ¶ 12, J.R. 021 ¶ 12, J.R. 026 ¶ 11, J.R. 031 ¶ 10 and J.R. 043 ¶ 8.

The remaining Plaintiff in this case, ILCM, received a CIGP Grant funded by the FY 24 Appropriations Act. ECF No. 30-3 at J.R. 035 ¶ 4. This Grant has a performance period of November 22, 2024, through September 30, 2026. *See* ECF No. 30-1 at 5; ECF No. 32-8 at J.R. 0442. Plaintiff ILCM alleges that approximately $272,515 in Grant funds remains unpaid for this Grant. ECF No. 30-3 at J.R. 038 ¶ 12. Each of the Plaintiffs received a Grant award letter from DHS memorializing the terms and conditions of their respective Grants. *See* ECF Nos. 32-1, 32-2, 32-3, 32-4, 32-5, 32-6, 32-7, 32-8 and 32-9.

The Grants incorporate by reference the Office of Management and Budget's Guidance on Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards, 2 C.F.R. § 200 *et seq.* (the "Uniform Guidance"). *See* ECF No. 32-1 at J.R. 0267; ECF No. 32-2 at J.R. 0292; ECF No. 32-3 at J.R. 0319; ECF No. 32-4 at J.R. 0346; ECF No. 32-5 at J.R. 0373; ECF No. 32-6 at J.R. 0400; ECF No. 32-7 at J.R. 0427; ECF No. 32-8 at J.R. 0453; and ECF No. 32-9 at J.R. 0478. In this regard, the Uniform Guidance requires, among other things, that an award-making agency "manage and administer the Federal award in a manner so as to ensure that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations." 2 C.F.R. § 200.300(a). In addition, the Uniform Guidance requires that award-making agencies reimburse award

6

recipients for covered expenses "within 30 calendar days after receipt of the payment request unless the [agency] . . . reasonably believes the request to be improper." 2 C.F.R. § 200.305[b)(3). Lastly, the Uniform Guidance also mandates that "[p]ayments for allowable costs must not be withheld at any time during the period of performance" of the award "unless required by Federal statute, [or] regulations," or if the award recipient has failed to comply with the award terms or is delinquent on a debt to the federal government. 2 C.F.R. § 200.305(b)(6).

Each of the Plaintiffs' Grants also includes a termination provision. Relevant to the FY23 Plaintiffs, the Grants funded by the FY 2023 Appropriations Act provide that:

> Either the Recipient or the DHS may terminate this Award by giving written notice to the other party at least thirty (30) calendar days prior to the effective date of the termination. All notices are to be transmitted to the DHS Grants Officer via the email address identified on the Notice of Award. The Recipient's authority to incur new costs will be terminated upon arrival of the date of receipt of the letter or the date set forth in the notice. Any costs incurred up to the earlier of the date of the receipt of the notice or the date of termination set forth in the notice will be negotiated for final payment. Closeout of this Award will be commenced and processed pursuant to 2 C.F.R. § 200.344.

*See* ECF No. 32-1 at J.R. 0266; ECF No. 32-2 at J.R. 0291; ECF No. 32-3 at J.R. 0318; ECF No. 32-4 at J.R. 0345; ECF No. 32-5 at J.R. 0372; ECF No. 32-6 at J.R. 0399; ECF No. 32-7 at J.R. 0426; ECF No. 32-9 at J.R. 0477. The termination provision in Plaintiff ILCM's Grant contains the following language:

> 1. General. The regulations at 2 C.F.R. §§ 200.340-343 set forth the administrative requirements concerning the termination of federal awards. Termination means the ending of a federal award, in whole or in part, at any time before the planned end of the period of performance. As required by 2 C.F.R. § 200.340(b), the purpose of this term and condition is to specify termination provisions applicable to the federal award in addition to those set forth in the regulations.

> 2. Termination by DHS. The regulation at 2 C.F.R. § 200.340(a) provides that DHS may unilaterally terminate the federal award in

7

whole or part if the Recipient fails to comply with the terms and conditions of the federal award and when, to the greatest extent authorized by law, the federal award no longer effectuates the program goals or agency priorities. When terminating a federal award, the DHS will promptly notify the Recipient in writing via email of the termination that will set forth the reasons for the termination and the effective date of the termination. A Recipient may object and provide written information and documentation challenging the termination electronically via email to DHS within 30 days of receiving the termination notice. The termination notice may provide additional procedures for submitting an objection to the termination.

ECF No. 32-8 at J.R. 0452.

    <u>Executive Order 14159, The Noem Memorandum And The Freeze Letter</u>

On January 20, 2025, President Trump issued Executive Order 14159, which is entitled "Protecting the American People Against Invasion." *See* 90 Fed. Reg. 8443. Section 19(a) of Executive Order 14159 addresses "Funding Review" and provides that the Secretary of Homeland Security shall "[i]mmediately review and, if appropriate, audit all contracts, grants, or other agreements providing Federal funding to non-governmental organizations supporting or providing services, either directly or indirectly, to removable or illegal aliens, to ensure that such agreements conform to applicable law and are free of waste, fraud, and abuse, and that they do not promote or facilitate violations of our immigration laws." *Id.* at 8447. Section 19(b) of the Executive Order also instructs the Secretary of Homeland Security to "[p]ause distribution of all further funds pursuant to such agreements pending the results of the review," while sections 19(c) and (e) instruct the Secretary of Homeland Security to "[t]erminate all such agreements determined to be in violation of law or to be sources of waste, fraud, or abuse," and "[i]nitiate clawback or recoupment procedures, if appropriate, for any agreements" meeting this description. *Id.*

On January 28, 2025, Secretary Noem issued the Noem Memorandum to DHS component agency and office heads, which placed "on hold pending review," "all Department grant disbursements and assessments of grant applications that: (a) go to non-profit organizations or for which non-profit organizations are eligible, and (b) touch

8

in any way on immigration, . . . except to the extent required by controlling legal authority."  ECF No. 30-3 at J.R. 001.  The Noem Memorandum provides three reasons for this funding freeze: "(1) concerns that these grants may be funding illegal activities, such as encouraging or inducing illegal immigration, 8 U.S.C. § 1324(a)(1)(A)(iv), or illegal harboring of illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(ii)-(iii); (2) concerns that there may be racially discriminatory language in certain grants; and (3) concerns that these grants may not be an efficient use of government resources."  *Id*.  The Noem Memorandum also provides that the funding freeze is "[e]ffective immediately."  *Id*.

On February 4, 2025, the Plaintiffs received an email and letter from USCIS's CIGP email address stating that, "[p]ursuant to the Department of Homeland Security Secretary Kristi Noem's memorandum dated January 28, 2025, and effective immediately, your grant from U.S. Citizenship & Immigration Services is frozen" (the "Freeze Letter").  ECF No. 30-3 at J.R. 002.  The Freeze Letter also states that "payments are not available at this time," and that USCIS "recognize[s] this will have an impact on your organization" but is "unable to provide a timeline on this freeze."  *Id*.

The Grant Termination Letters

On March 27, 2025, DHS sent a letter (the "Termination Letters") to each of the Plaintiffs that terminates their Grants and provides as follows:

> Pursuant to 2 C.F.R. § 200.340(a)(2) and the terms and conditions of your award, DHS has determined that the scope of work performed under this award no longer effectuates the program goals and the Department's priorities. [The Plaintiff] must cease all federally funded work under this Award and any costs incurred for such work on or after the date of this letter will be unallowable.

*See* ECF No. 31-2 at J.R. 220; ECF No. 31-3 at J.R. 223; ECF No. 31-4 at J.R. 226; ECF No. 31-5 at J.R. 229; ECF No. 31-6 at J.R. 232; ECF No. 31-7 at J.R. 235; ECF No. 31-8 at J.R. 238; ECF No. 31-9 at J.R. 241; ECF No. 31-10 at J.R. 244.  The Termination Letters also state that the Plaintiffs' Grants are terminated, effective 30 days after the date of the letter, on April 26, 2025.  *Id*.

9

The Termination Letters further state that any costs incurred by the Plaintiffs after the date of the Termination Letters are not allowable, unless the costs are expressly authorized by DHS, and that any costs resulting from proper financial obligations before the date of the Termination Letters would be allowable, if not incurred in anticipation of termination and otherwise been allowable had the award not been terminated.  *Id.*  Lastly, the Termination Letters provide the amount of remaining unobligated federal funding for each of the Grants and provides the process for the Plaintiffs to submit an objection to the termination and closeout of their respective Grant.  *Id.*

The Plaintiffs contend in this action that the Secretary's decisions to freeze, and to ultimately terminate, their Grants is arbitrary and capricious, and contrary to law.  ECF No. 1 at ¶¶ 99-121; *see also* ECF No. 20-1 at 12-23.  And so, the Plaintiffs request that, among other things, the Court: (1) declare that the Noem Memorandum freezing the Grants is unconstitutional and unlawful; (2) vacate and set aside the Noem Memorandum and the Defendant's other actions to implement the Memorandum; (3) temporarily restrain and preliminarily and permanently enjoin Defendants from implementing the Noem Memorandum; and (4) enjoin the Defendants from imposing any negative consequences on the Plaintiffs or similarly situated organizations for noncompliance with the terms of the Grants.  *Id.* at Prayer for Relief.

### B.  Procedural History

On March 17, 2025, the Plaintiffs filed the complaint in this matter.  ECF No. 1. On March 25, 2025, the Plaintiffs filed their motion for preliminary injunction, temporary restraining order and for APA stay, pursuant to Fed. R. Civ. P. 65 and 5 U.S.C. § 705.  ECF No. 30.  On March 28, 2025, the Plaintiffs filed a notice informing the Court that their Grants had been terminated.  ECF No. 31.

On April 1, 2025, the Defendants filed a response in opposition to the Plaintiffs' motion.  ECF No. 32.  On April 4, 2025, the Plaintiffs filed a reply brief.  ECF No. 36.  On April 7, 2025, the parties filed supplemental briefing addressing the Supreme Court's decision in *Dep't of Educ. v. California*, 604 U.S. ____ (2025), 2025 WL 1008354 (Apr. 4,

10

2025).  ECF Nos. 40 and 42.  On April 8, 2025, the Court held a hearing on this matter.
ECF No. 43.

   The Plaintiffs' motion having been fully briefed, the Court resolves the pending
motion.

## III.  LEGAL STANDARDS

### A.  Rule 65, Temporary Restraining Orders And Preliminary Injunctions

   To obtain either a temporary restraining order, or a preliminary injunction, the party
seeking the relief must show that: (1) there is a likelihood of success on the merits; (2)
there is a likelihood the movant will suffer irreparable harm in the absence of preliminary
relief; (3) the balance of equities tips in movant's favor; and (4) the injunction is in the
public interest.  *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *see also Maags
Auditorium v. Prince George's Cnty., Maryland*, 4 F. Supp. 3d 752, 760 n.1 (D. Md. 2014)
("The standard for a temporary restraining order is the same as a preliminary injunction."),
*aff'd*, 681 F. App'x 256 (4th Cir. 2017); *League of Women Voters of North Carolina v.
North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014).  When the Government is the opposing
party, the balance of equities and public interest prongs merge.  *Nken v. Holder*, 556 U.S.
418, 435 (2009).  A preliminary injunction cannot issue unless all of these factors are
satisfied.  *See Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013).  And so, the Court may
issue a temporary restraining order or preliminary injunction to protect the status quo, or to
return the parties to the "last uncontested status between the parties which preceded the
controversy," so that the Court has time to "render a meaningful judgment on the merits."
*League of Women Voters of North Carolina*, 769 F.3d at 236; *United States v. South
Carolina*, 720 F.3d 518, 524 (4th Cir. 2013) (quoting *In re Microsoft Corp. Antitrust Litig.*,
333 F.3d 517, 525 (4th Cir. 2003)).

### B.  The Interplay Between The APA And The Tucker Act

   It is well-established that "[t]he United States is immune from suit unless it
unequivocally consents" to be sued.  *Maine Cmty. Health Options v. United States*, 590
U.S. 296, 322 (2020).  One such waiver of the Government's immunity from suit is

11

provided under the APA, which waives the Government's sovereign immunity for claims against the United States "seeking relief other than money damages." 5 U.S.C. § 702; *see also* 28 U.S.C. § 1331 (federal question statute). The Court's judicial review under the APA is limited to review of a "final agency action." 5 U.S.C. § 704. And so, the Court may only set aside agency action, findings, and conclusions if they are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Ohio Valley Env't Coalition v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) (quoting 5 U.S.C. § 706(2)).

In addition to seeking injunctive relief, a plaintiff bringing a claim under the APA may also seek a stay of agency action pursuant to Section 705 of the APA. 5 U.S.C. § 705. "The standards for granting a TRO, a preliminary injunction, and a § 705 stay are essentially the same." *Am. Federation of State, Cnty. & Mun. Emps. v. Soc. Sec. Admin.*, No. CV ELH-25-0596, 2025 WL 868953, at *53 (D. Md. Mar. 20, 2025) (citations omitted). The Supreme Court has recognized the "distinction between an action at law for damages . . . and an equitable action for specific relief" and observed that "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Bowen v. Massachusetts*, 487 U.S. 879, 398 (1988). And so, the APA's exclusion for money damages in Section 702 does not include claims for specific relief, including monetary relief, where the plaintiff sought simply to enforce a statutory mandate. *Id*. at 900-01, 910 & n. 48. The Fourth Circuit has similarly held that "[t]he APA allows private parties to sue the federal government in district court over final agency actions, so long as they seek relief other than monetary damages 'for which there is no other adequate remedy in a court.'" *Coleman v. Kendall*, 74 F.4th 610, 615 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 818 (2024) (quoting *Randall v. United States*, 95 F.3d 339, 346 (4th Cir. 1996)).

Another waiver of the Government's sovereign immunity is found under the Tucker Act, which waives sovereign immunity for claims brought against the United States founded "upon any express or implied contract." 28 U.S.C. § 1491(a)(1). For such claims,

the United States Court of Federal Claims has exclusive jurisdiction when the amount sought is greater than $10,000.  28 U.S.C. § 1346(a)(2).

Relevant to the pending motion, the Fourth Circuit has long recognized that "[t]he interplay between the Tucker Act and the APA is somewhat complicated and raises some significant issues of federal court jurisdiction." *Randall*, 95 F.3d at 346.  In this regard, courts have held that the Tucker Act applies if the issue in a case is "at its essence" a contract claim.  *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982).  To determine the essence of a claim, the Court considers: (1) "the source of the rights upon which the plaintiff bases its claims," and (2) "the type of relief sought (or appropriate)." *Id*. at 968.  The Fourth Circuit has also held that a plaintiff primarily seeks injunctive relief when the relief requested is "not . . .  an incident of, or collateral to, a monetary award." *Coleman*, 74 F.4th at 615 (citing *Randall*, 95 F.3d at 347).  And so, the Court looks to the complaint, with "an eye toward 'the true nature of the action,'" to determine whether the exercise of jurisdiction is appropriate under the APA or the Tucker Act.  *Am. Ass'n of Colls. for Teacher Educ. v. McMahon*, No. 25- cv-00702, 2025 WL 863319, at *3 (D. Md. Mar. 19, 2025) (quoting *Williams v. Roth*, No. 21-cv- 02135, 2022 WL 4134316, at *4 (D. Md. Sept. 12, 2022)).

Recently, the Supreme Court addressed the question of whether jurisdiction is properly found under the APA or the Tucker Act in a challenge to the Government's decision to freeze the funding for certain grants to teachers awarded through programs authorized by a federal statute.  *Dep't of Educ. v. California*, 604 U.S. ____ (2025), 2025 WL 1008354 (U.S. Apr. 4, 2025).  In that case, the Supreme Court stayed the district court's temporary restraining order pending appeal, because, among other things, the Supreme Court found that "the Government is likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA."  *Id*. at *1 (citing *Sampson v. Murray*, 415 U.S. 61, 87 (1974)).

13

IV.     ANALYSIS

The Plaintiffs have moved for a temporary restraining order, preliminary injunction and stay of the Secretary's decisions to freeze, and to ultimately terminate, their Grants, pursuant Rule 65 and 5 U.S.C. § 705, upon the grounds that: (1) they have suffered irreparable harm due to the freeze and termination of their Grants; (2) they are likely to succeed upon the merits of their APA claims; (3) the balance of the equities and public interest favor awarding the requested relief; and (4) they have standing to bring their claims.  ECF No. 30-1 at 11-29.  And so, the Plaintiffs request that the Court "grant preliminary relief to restore the funding that Defendants arbitrarily, capriciously, and unlawfully froze," by ordering the Defendants other than the President to "not pause, freeze, impede, or block the disbursement of grant funds."  ECF No. 30 at 1; ECF No. 30-2.[2]

The Government counters in its response in opposition to the Plaintiffs' motion that the Plaintiffs have not shown that they are entitled to the requested emergency injunctive relief, because the Plaintiffs have not demonstrated irreparable harm.  ECF No. 32 at 10-15.  The Government also argues that the Plaintiffs are not likely to succeed upon the merits of their claims, because: (1) the FY 23 Plaintiffs' claims are contract claims for which the United States Court of Federal Claims has exclusive jurisdiction; (2) the funding decisions at issue in this case are committed to agency discretion and are not subject to arbitrary and capricious review; and (3) neither the funding freeze, nor the Grant terminations, are contrary to law.  *Id*. at 15-26.  Lastly, the Government argues that the balance of equities does not favor the Plaintiffs and that the relief sought by the Plaintiffs is overbroad.  *Id*. at 26-29.  And so, the Government requests that the Court deny the Plaintiffs' motion.  *Id*. at 30.

---

[2] Although the Plaintiffs' Grants have now been terminated, they seek the same injunctive relief.  *See* ECF No. 31 at 2.

14

For the reasons that follow, a careful reading of the complaint and review of the evidence currently before the Court shows that the FY 23 Plaintiffs have not demonstrated a substantial likelihood of success upon the merits of their APA claims, because these claims are in essence contract claims against the United States for which the United States Court of Federal Claims has exclusive jurisdiction. And so, the Court: (1) DENIES the Plaintiffs' motion as to Plaintiffs Solutions In Hometown Connections; Central American Resource Center; Coalition For Humane Immigrant Rights; Community Center for Immigrants, Inc.; English Skills Learning Center; Michigan Organizing Project, doing business as Michigan United; Hebrew Immigrant Aid Society and Council Migration Service of Philadelphia; and Instituto del Progreso Latino; (2) HOLDS-in-ABEYANCE the Plaintiffs' motion as to Plaintiff Immigrant Law Center of Minnesota; and (3) DIRECTS the parties to FILE a joint status report stating their respective views regarding how the matter should proceed on or before April 15, 2025.

### A. The FY 23 Plaintiffs Have Not Shown A Substantial Likelihood Of Success Upon The Merits

As an initial matter, the Plaintiffs have not met their burden to demonstrate a substantial likelihood of success on the merits of the FY 23 Plaintiffs' APA claims, because they have not established that the Court possesses subject-matter jurisdiction over these claims. The Plaintiffs rely upon the APA to bring their claims in this case challenging the Secretary's decisions to freeze, and to ultimately to terminate, their Grants. *See* ECF No. 1 at ¶¶ 23-26 and 99-121. The APA waives the Government's sovereign immunity for claims against the United States "seeking relief other than money damages." 5 U.S.C. § 702; *see also* 28 U.S.C. § 1331 (federal question statute). Another waiver of the Government's sovereign immunity is found in the Tucker Act, which waives sovereign immunity for claims brought against the United States founded "upon any express or implied contract." 28 U.S.C. § 1491(a)(1). For such claims, the United States Court of Federal Claims has exclusive jurisdiction when the amount sought is greater than $10,000. 28 U.S.C. § 1346(a)(2).

15

As the Fourth Circuit has recognized, "[t]he interplay between the Tucker Act and the APA is somewhat complicated and raises some significant issues of federal court jurisdiction." *Randall*, 95 F.3d at 346. And so, to determine whether the Court possesses subject-matter jurisdiction over the FY 23 Plaintiffs' claims here, the Court must look to the complaint to determine: (1) the source of the rights upon which the Plaintiffs base their claims and (2) the type of relief sought. *Megapulse*, 672 F.2d at 968; *Am. Ass'n of Colls. for Teacher Educ.*, 2025 WL 863319, at *3 (quoting *Williams*, 2022 WL 4134316, at *4). The Government persuasively argues that the FY 23 Plaintiffs must bring their claims in this case under the Tucker Act, because these claims are in essence contract-based claims seeking monetary relief for several reasons.

### 1. The Source Of The FY 23 Plaintiffs' Claims Is Their Grants

First, a careful reading of the complaint makes clear that the source of the FY 23 Plaintiffs' claims in this case is their Grant agreements with DHS. In this regard, the complaint alleges that each FY 23 Plaintiff received a CIGP grant. *See* ECF No. 1 at ¶¶ 62, 63, 72, 75, 78, 81, 84, 87, 90, and 96. The complaint also alleges that the FY 23 Plaintiffs used the funds provided by the Grants to provide certain services under the CIGP. ECF No. 1 at ¶ 2. The Plaintiffs also rely upon their Grants to establish standing to bring this case and the Plaintiffs allege that they have been irreparably harmed by the loss of the funds provided under the Grants. ECF No. 1 at ¶ 4; *see also* ECF No. 30-1 at 28-29.

The other evidence before the Court similarly shows that the source of the rights upon which the FY 23 Plaintiffs base their claims is their Grant agreements with DHS. Notably, the Plaintiffs allege in this case that the Secretary's decisions to freeze, and to ultimately terminate, their Grants is contrary to the relevant regulations governing the process for payment and reimbursement for the Grants, which are found in the Uniform Guidance.[3] ECF No. 1 at ¶¶ 55 and 119; *see also* ECF No. 30-1 at 21. A careful reading of

---

[3] The Uniform Guidance provides that "[p]ayments for allowable costs must not be withheld at any time during the period of performance" of a grant "unless required by Federal statute, [or] regulations," or if the award recipient—i.e., a grantee—has failed to comply with the terms or is

the FY23 Plaintiffs' Grant agreements shows that these agreements incorporate these regulations by reference, thereby making the Uniform Guidance part of the FY 23 Plaintiffs' Grant agreements. *See* ECF No. 32-1 at J.R. 0267; ECF No. 32-2 at J.R. 0292; ECF No. 32-3 at J.R. 0319; ECF No. 32-4 at J.R. 0346; ECF No. 32-5 at J.R. 0373; ECF No. 32-6 at J.R. 0400; ECF No. 32-7 at J.R. 0427; and ECF No. 32-9 at J.R. 0478 (Grant Agreement Section Q "Governing Provisions"); *see also* 2 C.F.R. §§ 200 *et seq*. The Grant agreements similarly provide that the Uniform Guidance will take precedence over other terms in interpreting these Grant agreements. *See* ECF No. 32-1 at J.R. 0267, ECF No. 32-2 at J.R. 0292, ECF No. 32-3 at J.R. 0319, ECF No. 32-4 at J.R. 0346, ECF No. 32-5 at J.R. 0375, ECF No. 32-6 at J.R. 0400, ECF No. 32-7 at J.R. 0427 and ECF No. 32-9 at J.R. 0478 (Grant Agreement Section Q "Governing Provisions"). And so, again, the source of the rights upon which the FY 23 Plaintiffs base their APA claims appears to be their Grant agreements with the Government.

The Court also observes that the termination of the FY 23 Plaintiffs' Grants is addressed in the Grant agreements. *See* ECF No. 1 at ¶¶ 99-121. Specifically, Section N of the FY 23 Plaintiffs' Grant agreements provides that:

> Either the Recipient or the DHS may terminate this Award by giving written notice to the other party at least thirty (30) calendar days prior to the effective date of the termination. All notices are to be transmitted to the DHS Grants Officer via the email address identified on the Notice of Award. The Recipient's authority to incur new costs will be terminated upon arrival of the date of receipt of the letter or the date set forth in the notice. Any costs incurred up to the earlier of the date of the receipt of the notice or the date of termination set forth in the notice will

---

delinquent on a debt to the federal government. 2 C.F.R. § 200.305(b)(6). The Uniform Guidance also provides that agencies must reimburse award recipients for covered expenses "within 30 calendar days after receipt of the payment request unless the [agency] . . . reasonably believes the request to be improper." 2 C.F.R. § 200.305(b)(3). Lastly, the Uniform Guidance provides that a Federal agency may terminate the grant award if an award no longer effectuates the program goals or agency priorities. 2 C.F.R. § 200.340(a)(4).

17

> be negotiated for final payment.  Closeout of this Award will be
> commenced and processed pursuant to 2 C.F.R. § 200.344.

*See* ECF No. 32-1 at J.R. 0266, ECF No. 32-2 at J.R. 0291, ECF No. 32-3 at J.R. 0318,

ECF No. 32-4 at J.R. 0345, ECF No. 32-5 at J.R. 0372, ECF No. 32-6 at J.R. 0399, ECF

No. 32-7 at J.R. 0426 and ECF No. 32-9 at J.R. 0477.   There is no dispute in this case that

DHS terminated the Plaintiffs' Grants on March 27, 2025, and that each Plaintiff has

received a Termination Letter providing that:

> Pursuant to 2 C.F.R. § 200.340(a)(2) and the terms and
> conditions of your award, DHS has determined that the scope of
> work performed under this award no longer effectuates the
> program goals and the Department's priorities. [The Plaintiff]
> must cease all federally funded work under this Award and any
> costs incurred for such work on or after the date of this letter will
> be unallowable.

*See* ECF No. 31-2 at J.R. 220; ECF No. 31-3 at J.R. 223; ECF No. 31-4 at J.R. 226; ECF

No. 31-5 at J.R. 229; ECF No. 31-6 at J.R. 232; ECF No. 31-7 at J.R. 235; ECF No. 31-8 at

J.R. 238; ECF No. 31-10 at J.R. 244.  And so, the FY 23 Plaintiffs' APA challenge to the

termination of their Grants also appears to be based upon the Grant agreements.

Given this, the Court is not persuaded by the Plaintiffs' argument that the source of

their APA claims in this case is statutory, regulatory and constitutional in nature.  ECF No.

36 at 1.   And so, the Court concludes that the source of the rights with regards to the FY 23

Plaintiffs' APA claims here is their respective Grant agreements with DHS.

## 2.   The Relief Sought Is Mostly Monetary In Nature

While a somewhat closer question, the complaint also shows that the relief sought

by the FY 23 Plaintiffs in this action is primarily monetary in nature and backward-looking.

The Fourth Circuit has held that a plaintiff primarily seeks injunctive relief when the relief

requested is "not . . . an incident of, or collateral to, a monetary award."  *Coleman*, 74 F.4th

at 616 (citing *Randall*, 95 F.3d at 347).  In this case, the Plaintiffs acknowledge that they

seek monetary relief as a remedy.  *See* ECF No. 30 at 1 ("Plaintiffs request that this Court

grant preliminary relief to restore the funding that Defendants arbitrarily, capriciously, and

18

unlawfully froze over a month ago."); ECF No. 32 at 15.[4]  While the Plaintiffs argue that they also seek prospective injunctive relief in this case, and that their claim for monetary relief is incidental, or collateral to, their request for injunctive relief, the allegations in the complaint do not support such a reading of their APA claims.  ECF No. 36 at 3.

Notably, the Plaintiffs allege throughout the complaint that they seek reimbursement for expenses already incurred in reliance upon the terms of their Grants. ECF No. 1 at ¶¶ 73, 76, 79, 82, 85, 88, 91, and 97.  Such claims for reimbursement for work already performed under the Grants is monetary in nature and backward-looking. Indeed, as the Plaintiffs acknowledge in their motion, "most Plaintiffs have outstanding requests for reimbursement, and all will need to submit additional reimbursement requests shortly."[5]  ECF No. 30-1 at 8.

The Court also observes that the Termination Letters issued to the FY 23 Plaintiffs make clear that the Plaintiffs cannot incur new costs under the Grants without the prior authorization of DHS.  *See* ECF No. 31-2 at J.R. 220; ECF No. 31-3 at J.R. 223; ECF No. 31-4 at J.R. 226; ECF No. 31-5 at J.R. 229; ECF No. 31-6 at J.R. 232; ECF No. 31-7 at J.R. 235; ECF No. 31-8 at J.R. 238; ECF No. 31-9 at J.R. 241; ECF No. 31-10 at J.R. 244. Given this, the evidence currently before the Court shows that the Plaintiffs will not incur new expenses under their Grants in the future.  And so, the Court agrees with the Government that the Plaintiffs' claims here are monetary in nature and backward-looking and that these claims should, therefore, be brought pursuant to the Tucker Act.

---

[4] In *Bowen v. Massachusetts*, 487 U.S.  879 (1988), the Supreme Court explained that, while money damages is always a form of monetary relief, not all monetary relief is money damages.  *Id*. at 894-896.  And so, the fact that the Plaintiffs seek monetary relief in this case is not dispositive of the question of jurisdiction.

[5] The Plaintiffs argue that the requested relief in this case is primarily prospective and forward-looking, because each Plaintiff has an ongoing relationship with the Defendants and the "relief should result in the resumption of regular disbursements of Congressionally appropriated and previously awarded funds."  ECF No. 36 at 3.  But, as discussed above, the Termination Letters make clear that the Plaintiffs cannot incur additional costs without the prior authorization of DHS. *See e.g.*, ECF No. 31-2 at J.R. 220.

Lastly, the Court observes as a final matter that the Plaintiffs have not shown that the United States Court of Federal Claims, which has exclusive jurisdiction over Tucker Act claims for more than $10,000, cannot provide an adequate remedy for their claims in this case. During the hearing held in this matter on April 8, 2025, the Plaintiffs argued that the Court of Federal Claims cannot provide an adequate remedy in this case, because that court cannot provide a remedy for the costs that the Plaintiffs have incurred since their Grants were frozen, such as the cost of legal representation. *See* ECF No. 45 at 26:5-13 and 29:10-14. But it is well-established that the Plaintiffs may pursue claims to recover such costs before the Court of Federal Claims as termination costs. *See Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 80 (D.C. Cir. 1985). The Court of Federal Claims may also award injunctive relief that is incident to the FY 23 Plaintiffs' monetary damages in this case. *See Coleman*, 74 F.4th at 615; *Randall*, 95 F.3d at 347; 28 U.S.C. § 1491(a)(2) (the Tucker Act permits the Court of Federal Claims to provide injunctive relief when such relief is necessary to provide an entire remedy and when the injunction is "an incident of and collateral to" an award of monetary relief). And so, the Plaintiffs simply have not shown that they lack an adequate remedy before the United States Court of Federal Claims.

For the aforementioned reasons, the FY 23 Plaintiffs have not demonstrated a substantial likelihood of success upon the merits of their APA claims. And so, the Court must DENY the Plaintiffs' motion with respect to these claims.

## V.  CONCLUSION

In sum, the FY 23 Plaintiffs have not shown a substantial likelihood of success upon the merits of their APA claims, to prevail on their motion for emergency injunctive relief. And so, for the foregoing reasons, the Court:

> (1) **DENIES** the Plaintiffs' motion as to Plaintiffs Solutions In Hometown Connections; Central American Resource Center; Coalition For Humane Immigrant Rights; Community Center for Immigrants, Inc.; English Skills Learning Center; Michigan Organizing Project, doing business as

Michigan United; Hebrew Immigrant Aid Society and Council Migration Service of Philadelphia; and Instituto del Progreso Latino;

(2) **HOLDS-in-ABEYANCE** the Plaintiffs' motion as to Plaintiff Immigrant Law Center of Minnesota; and

(3) **DIRECTS** the parties to **FILE** a joint status report to the Court regarding how the matter should proceed **on or before April 15, 2025**.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

21