# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| **GREEN & HEALTH HOMES INITIATIVE, INC., ET AL.** | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | |
| **ENVIRONMENTAL PROTECTION AGENCY, ET AL.** | * | |
| | * | Case No.: 1:25-cv-01096 |
| Defendants. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**Supplemental Declaration of R.T. Rybak**
**President & Chief Executive Officer**
**The Minneapolis Foundation**

R.T. Rybak declares as follows:

1. I am the President and Chief Executive Officer of the Minneapolis Foundation. I have personal knowledge of the matters set forth in this declaration or have knowledge of the matters based on my review of information and records gathered by my staff at my direction.

2. I provided a Declaration in this case on April 2, 2025. *See* ECF 2-14. This Supplemental Declaration provides further information regarding the irreparable harm and adverse effects that have impacted the Minneapolis Foundation since the filing of the Complaint and Motion for Preliminary Injunction and articulates further the irreparable and significant organizational damage that will afflict the Minneapolis Foundation as a result of the termination of the $8 million initial grant and suspension of the $52 million grant under the Thriving Communities Grantmaking Program (the Program" or "Thriving Communities Program"). The

Program and the related grants represent a significant portion of our grant-making funds and reflect a critical expansion in our organizational mission scope.

3. As stated in my original Declaration, the Minneapolis Foundation has been using hundreds of thousands of its own reserve dollars to temporarily support its statutory partners in providing technical assistance to Program applicants and sub-recipients, and to retain key employees and independent contractors working on the Program across the Minneapolis Foundation and its partners. The Minneapolis Foundation has absorbed more than $310,000 in personnel expenses and other costs to continue our administration of the Program using limited reserve funds. It is not financially feasible for us to continue this type of funding support without access to the initial and subsequent grants, as we will be forced to issue notices of termination to five full-time staff dedicated to the program as early as next week without immediate relief.

4. The Minneapolis Foundation made a strategic decision several years ago to expand its mission to include work in the environmental sector, which is why it expressly pursued the Thriving Communities grant. Especially given its status as a community foundation, being designated a Thriving Communities regional grant maker allowed the Organization to gain status and bona fides in the sector and was part of a deliberate effort to expand the scope of our work to more significantly benefit state, regional, and national communities focused on environmental and related infrastructure development work. This in turn has opened up other avenues and inroads for collaboration with national foundations, states, and other funding organizations. We have used our Program status to position the Minneapolis Foundation to credibly pursue other environmental work and to establish ourselves as a thought leader in the sector, an initiative on which we have spent thousands of hours and significant financial resources. If the Thriving Communities grant is terminated, all of the environmental sector work

we have pursued will necessarily be compromised, if not disappear, as a result, causing long-term irreparable harm to the Minneapolis Foundation. As such, termination of the grant poses an existential threat to the Minneapolis Foundation.

5. Among other things, as a direct result of its work on the Program, the Minneapolis Foundation is now positioned to serve as a primary public grantmaking partner to the Minnesota Department of Natural Resources in its upcoming efforts to distribute millions of dollars supporting environmental projects focused on public health and safety across the state. Without the Thriving Communities Program grants, our credibility in the environmental sector will be substantially diminished and irreparably damaged. Indeed, it will be impossible for the Minneapolis Foundation to maintain the internal systems and institutional knowledge necessary to support initiatives like that in Minnesota going forward. The inability to take on additional large-scale public grantmaking projects portends a drastic shift in the positioning of the Minneapolis Foundation more broadly and poses a severe threat to the mission of the organization.

6. Given the role that the Program has played in helping to attract new sources of funding, the grant termination also poses a direct and imminent threat to the financial sustainability and well-being of the Minneapolis Foundation. As a community foundation, we rely on our diversified funding sources as opposed to donor-advised funds in order to operate. Over 90 percent of the Minneapolis Foundation's funding is sourced from fundholders, which has traditionally narrowed and limited the scope of the organization's programmatic initiatives. Through implementation of the Thriving Communities Program grant, however, the Minneapolis Foundation gained significant interest from other local and state governmental entities, in addition to new attention from large philanthropies and prospective donors seeking to support the

organization's environmental work. Our commitment to pursue environmental work helped us attract several million dollars to the Minneapolis Foundation, and we have been in talks to bring in additional funding because of the Thriving Communities Program. These types of donations would not have occurred without the Thriving Communities Program and may also be at risk if the grant is terminated.

7. Since being selected as a regional grantmaker, the Minneapolis Foundation has deepened its relationships with new and existing funding partners across the country, fundamentally enhancing the mission and financial outlook of the organization. For example, we are now engaged in a national environmental initiative with the McKnight and MacArthur Foundations for which we would not be considered absent our role in the Thriving Communities Program. This initiative is the result of hundreds of hours of work and the investment of substantial resources focused on positioning the Minneapolis Foundation to pursue regional and national environmental projects. We have succeeded in establishing the Minneapolis Foundation as a leader in environmental grant making, but participation in the Program is the linchpin to the success of these efforts, the financial sustainability of the Minneapolis Foundation, and the current and future expansion of the organization. Termination of our Program grant will undermine our current and planned efforts and, worst case, will completely destroy the ability of the Minneapolis Foundation to be accepted as a leader in the sector, without which our mission and strategic plan for expansion of that mission will be irreversibly and irreparably harmed resulting in permanent injury to the Minneapolis Foundation. Grant termination would directly threaten the organization's financial future and will undermine our ability to carry out our mission as a community foundation. The harms described here are not speculative, but rather are directly tied to an imminent loss in funding opportunities and contraction of the organization's

operational capacity. These harms will also flow to the communities that the Minneapolis Foundation strives to support, amplifying the impact of the termination and suspension.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 23, 2025

_____
R.T. Rybak