IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| SOLUTIONS IN HOMETOWN CONNNECTIONS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 25-cv-00885-LKG<br><br>Dated: May 29, 2025 |

## MEMORANDUM OPINION

### I.     INTRODUCTION

In this civil action, the Plaintiffs, Solutions in Hometown Connections; Central American Resource Center; Coalition for Humane Immigrant Rights; Community Center for Immigrants, Inc.; English Skills Learning Center; Michigan Organizing Project doing business as Michigan United; Hebrew Immigrant Aid Society and Council Migration Services of Philadelphia doing business as HIAS Pennsylvania; Immigrant Law Center of Minnesota; Instituto del Progreso Latino; and Massachusetts Immigrant and Refugee Advocacy Coalition, challenge the decisions of Homeland Security Secretary Kristi Noem (the "Secretary") to freeze, and later terminate, certain grants (the "Grants") to provide funds for, among other things, programs and services to assist lawful permanent residents with learning English, studying for the citizenship test and applying to be naturalized citizens, that have been awarded to the Plaintiffs by the United States Citizenship and Immigration Services ("USCIS").  ECF No. 52.  The Plaintiffs have filed a renewed motion for a preliminary injunction and Administrative Procedure Act ("APA") stay, pursuant to Fed. R. Civ. P. 65 and 5 U.S.C. § 705.[1]  ECF No. 53.  The motion is fully briefed.  ECF

---

[1] The Plaintiffs previously moved for a temporary restraining order, preliminary injunction and Administrative Procedure Act stay, pursuant to Fed. R. Civ. P. 65 and 5 U.S.C. § 705 on March 25, 2025.  ECF No. 30.  The Court denied the Plaintiffs' motion as to eight of the nine Plaintiffs and held-in-abeyance the Plaintiffs' motion as to the remaining Plaintiff.  ECF No. 46.  On April 17, 2025, the parties filed a joint status report, stating, among other things, that the Plaintiffs sought to file an amended complaint and renewed motion for preliminary relief.  ECF No. 49.  On April 18,

Nos. 53, 63 and 66; *see also* ECF No. 65.  The Court held a hearing on the Plaintiffs'
motion on May 20, 2025.  ECF Nos. 67 and 68.  For the reasons that follow, and those
stated during the May 20, 2025, hearing, the Court **DENIES** the Plaintiffs' motion.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

### A.  Factual Background

In this civil action, the Plaintiffs challenge the decisions of Homeland Security
Secretary Kristi Noem to freeze, and later terminate, their Grants, which provide funding
for program and services to assist lawful permanent residents with learning English,
studying for the citizenship test and applying to be naturalized citizens.  ECF No. 52.
Specifically, the Plaintiffs assert the following claims against the Defendants in the
amended complaint: (1) violation of the APA, arbitrary and capricious agency action
(Count I); (2) violation of the APA, contrary to law (Count II); (3) violation of separation of
powers (Count III); (4) violation of the Due Process Clause of the Fifth Amendment of the
United States Constitution (Count IV); (5) ultra vires (Count V); and (6) First Amendment
Retaliation (Count VI).  *Id.*

<u>The Parties</u>

Plaintiff Solutions in Hometown Connections ("SHC") is a nonprofit located in
Greenbelt, Maryland that provides immigration-related services such as English classes and
naturalization assistance to refugees, asylees and other newly arrived immigrants.   ECF
No. 52 at ¶ 10.

Plaintiff Central American Resource Center ("CARECEN DC") is a Washington,
D.C.-based nonprofit that offers assistance with naturalization applications and low-cost

---

2025, the Court issued a Scheduling Order with a deadline for the Plaintiffs' amended complaint
and a briefing schedule for the Plaintiffs' renewed motion for preliminary relief.  ECF No. 50.  The
Court now resolves the Plaintiffs' renewed motion for preliminary relief.

[2] The facts recited in this memorandum opinion are taken from the amended complaint; the
Plaintiffs' renewed motion for a preliminary injunction and APA stay; the memorandum in support
thereof; the exhibits attached thereto; and the Defendants' response in opposition thereto.  ECF
Nos. 30, 32, 52, 53, and 63.

citizenship classes, including English-language learning, citizenship information sessions and workshops, citizenship tutoring and interview preparation. *Id*. at ¶ 11.

Plaintiff Coalition for Humane Immigrant Rights ("CHIRLA") is a Los Angeles California-based nonprofit that provides services such as citizenship instruction, screenings for naturalization eligibility, and legal assistance with the citizenship process. *Id*. at ¶ 12.

Plaintiff Community Center for Immigrants Incorporated ("CCI") is a Milwaukee, Wisconsin-based nonprofit providing immigration-related legal services and educational programming such as free citizenship classes, voter registration and education, English classes and affordable legal services. *Id*. at ¶ 13.

Plaintiff English Skills Learning Center ("ESLC") is a nonprofit located in West Valley City, Utah that offers English-language classes to about 800 students a year, from more than 86 different countries, with 120 trained and mentored community volunteers. *Id*. at ¶ 14.

Plaintiff Michigan Organizing Project, doing business as Michigan United, is a statewide organization of churches, labor and community groups that together provide low-cost immigration-related legal services throughout the state of Michigan, including free citizenship classes, English-as-a-Second Language classes and assistance applying for citizenship. *Id*. at ¶ 15.

Plaintiff Hebrew Immigrant Aid Society and Council Migration Service of Philadelphia, doing business as "HIAS Pennsylvania" ("HIAS PA"), is a nonprofit organization headquartered in Philadelphia, Pennsylvania that provides services such as legal representation for legal permanent residents seeking to naturalize, civics classes, English language education, employment orientation, intensive case management support for vulnerable immigrants and resettlement services, including access to Social Security cards and community orientations. *Id*. at ¶ 16.

Plaintiff Immigrant Law Center of Minnesota ("ILCM") is a nonprofit organization headquartered in St. Paul, Minnesota that provides services such as applications for citizenship, DACA renewals and support for non-US citizen survivors, refugees and children. *Id*. at ¶ 17.

3

Plaintiff Instituto del Progreso Latino ("IDPL") is a nonprofit organization headquartered in Chicago, Illinois that provides services such as free citizenship, English and adult education classes and help navigating the application process to become a U.S. citizen. *Id*. at ¶ 18.

Plaintiff Massachusetts Immigrant and Refugee Advocacy Coalition ("MIRA Coalition") is a nonprofit organization headquartered in Boston, Massachusetts that offers classes, legal representation and free educational information to legal permanent residents looking to naturalize as U.S. Citizens. *Id*. at ¶ 19.

Defendant Secretary Kristi Noem is the Secretary of the Department of Homeland Security ("DHS"). *Id*. at ¶ 20.

Defendant DHS is a Federal agency that is headquartered in Washington, D.C. that oversees, among other things, immigration and border security along with its component agencies, including USCIS. *Id*. at ¶¶ 21 and 35.

Defendant USCIS is a component agency of DHS that is headquartered in Camp Springs, Maryland. *Id*. at ¶¶ 23 and 35.

Defendant Kika Scott is a senior official performing the duties of the Director of USCIS. *Id*. at ¶ 22.

<u>The Citizenship And Integration Grant Program</u>

As background, Congress created DHS and its component agencies—including USCIS—in the Homeland Security Act of 2002. *See* Homeland Security Act of 2002, Pub. L. No. 107-296 (codified at 6 U.S.C. § 101 *et seq*.). The Homeland Security Act also created the Office of Citizenship within USCIS. 6 U.S.C. § 271(f)(1). The Homeland Security Act provides that USCIS will "promot[e] instruction and training on citizenship responsibilities for aliens interested in becoming naturalized citizens of the United States, including the development of educational materials." 6 U.S.C. § 271(f)(2).

In 2009, USCIS's Office of Citizenship created the Citizenship And Integration Grant Program (the "CIGP"). ECF No. 52 at ¶ 41; *see also* ECF No. 30-1 at 2. The goal of the CIGP is to "expand the availability of high-quality citizenship preparation services for LPRs across the nation and to provide opportunities for immigrants to gain the knowledge and skills necessary to assimilate into the fabric of American society." ECF No. 52 at ¶ 42;

4

*see also* ECF No. 32 at 6.  To that end, grant recipients under this program provide "English language and civics instruction, legal assistance with naturalization applications, and community space for immigrant integration."  ECF No. 52 at ¶ 41.

The CIGP is authorized and funded through annual appropriations legislation enacted by Congress.  ECF No. 52 at ¶ 45.  Relevant to this case, Congress appropriated $25 million for the CIGP in Fiscal Year 2023.  The relevant appropriations language provides that:

> For necessary expenses of U.S. Citizenship and Immigration Services for Federal assistance for the Citizenship and Integration Grant Program, $25,000,000, to remain available until September 30, 2024.

Consolidated Appropriations Act of 2023, Pub. L. No. 117-328, 136 Stat. 4745 ("FY 23 Appropriations Act").

In Fiscal Year 2024, Congress appropriated $25 million for the CIGP and the relevant appropriations legislation provides that:

> For necessary expenses of U.S. Citizenship and Immigration Services for Federal assistance for the Citizenship and Integration Grant Program, $10,000,000, to remain available until September 30, 2025.

Further Consolidated Appropriations Act of 2024, Pub. L. No. 118-47, 138 Stat. 612 ("FY 24 Appropriations Act").  USCIS distributes the funding appropriated by Congress for the CIGP through various types of grants awarded under the program.  ECF No. 53-1 at 3.

The Grants

Eight of the 10 Plaintiffs in this case—SHC, CARECEN DC, CHIRLA, CCI, ESLC, Michigan United, HIAS PA and IDPL—received CIGP Grants funded by the FY 23 Appropriations Act (the "FY 23 Plaintiffs").  *See* ECF No. 53-2 at J.R. 0516 ¶ 6; ECF No. 53-3 at J.R.0527 ¶ 5; ECF No. 53-4 at J.R. 0535 ¶ 5; ECF No. 53-5 at J.R. 0542 ¶ 6; ECF No. 53-6 at J.R. 0550 ¶ 8; ECF No. 53-7 J.R. 0558 at ¶ 6; ECF No. 53-8 at J.R. 0566 ¶ 4; ECF No. 53-10 at J.R. 0589 ¶ 4.  The Grants for the FY 23 Plaintiffs have a performance period of October 1, 2023, through September 30, 2025.  *See* ECF No. 53-1 at 3.  In the amended complaint, the Plaintiffs allege that the FY 23 Plaintiffs collectively have more than $1 million in funding remaining for their respective Grants.  *See* ECF No. 53-2 at J.R. 0518

¶ 17; ECF No. 53-3 at J.R. 0528 ¶ 9; ECF No. 53-4 at J.R. 0536 ¶ 9; ECF No. 53-5 at J.R. 0543 ¶ 10; ECF No. 53-6 at J.R. 0551 ¶ 12; ECF No. 53-7 at J.R. 0560-0561 ¶ 14; ECF No. 53-8 at J.R. 0568 ¶ 10; ECF No. 53-10 at J.R. 0591 ¶ 12.

The two remaining Plaintiffs in this case, ILCM and MIRA Coalition (the "FY 24 Plaintiffs"), each received a CIGP Grant that is funded by the FY 24 Appropriations Act. ECF No. 53-9 at J.R. 0578 ¶ 4; ECF No. 53-11 at J.R. 0597 ¶ 5. These Grants have a performance period of November 22, 2024, through September 30, 2026. *See* ECF No. 53-1 at 4.

In the amended complaint, Plaintiff ILCM alleges that it has approximately $283,018 in funding remaining on its Grant. ECF No. 53-9 at J.R. 0578 ¶ 4. Plaintiff MIRA Coalition also alleges that it has approximately $221,179.47 in funding remaining on its Grant. ECF No. 53-11 at J.R. 0599-600 ¶ 13.

Each Plaintiff in this case received a Grant award letter from DHS memorializing the terms and conditions of their respective Grants. *See* ECF Nos. 32-1, 32-2, 32-3, 32-4, 32-5, 32-6, 32-7, 32-8 and 32-9; ECF No. 52 at ¶ 4. In this regard, it is undisputed that the Plaintiffs' Grant agreements (the "Grant Agreements") incorporate by reference the Office of Management and Budget's Guidance on Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards, 2 C.F.R. § 200 *et seq.* (the "Uniform Guidance"). *See* ECF No. 32-1 at J.R. 0267; ECF No. 32-2 at J.R. 0292; ECF No. 32-3 at J.R. 0319; ECF No. 32-4 at J.R. 0346; ECF No. 32-5 at J.R. 0373; ECF No. 32-6 at J.R. 0400; ECF No. 32-7 at J.R. 0427; ECF No. 32-8 at J.R. 0453; ECF No. 32-9 at J.R. 0478.

The Uniform Guidance requires, among other things, that an award-making agency "manage and administer the Federal award in a manner so as to ensure that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations." 2 C.F.R. § 200.300(a). In addition, the Uniform Guidance requires that award-making agencies reimburse award recipients for covered expenses "within 30 calendar days after receipt of the payment request unless the [agency] . . . reasonably believes the request to be improper." 2 C.F.R. § 200.305(b)(3). Lastly, the Uniform Guidance mandates that "[p]ayments for allowable

costs must not be withheld at any time during the period of performance" of the award "unless required by Federal statute, [or] regulations," or if the award recipient has failed to comply with the award terms or is delinquent on a debt to the federal government. 2 C.F.R. § 200.305(b)(6).

The Plaintiffs' Grant Agreements also have a termination provision. The termination provisions in the Grant Agreements for the FY 23 Plaintiffs are identical and provide that:

> Either the Recipient or the DHS may terminate this Award by giving written notice to the other party at least thirty (30) calendar days prior to the effective date of the termination. All notices are to be transmitted to the DHS Grants Officer via the email address identified on the Notice of Award. The Recipient's authority to incur new costs will be terminated upon arrival of the date of receipt of the letter or the date set forth in the notice. Any costs incurred up to the earlier of the date of the receipt of the notice or the date of termination set forth in the notice will be negotiated for final payment. Closeout of this Award will be commenced and processed pursuant to 2 C.F.R. § 200.344.

*See* ECF No. 32-1 at J.R. 0266; ECF No. 32-2 at J.R. 0291; ECF No. 32-3 at J.R. 0318; ECF No. 32-4 at J.R. 0345; ECF No. 32-5 at J.R. 0372; ECF No. 32-6 at J.R. 0399; ECF No. 32-7 at J.R. 0426; ECF No. 32-9 at J.R. 0477.

The termination provisions for the Grant Agreements for the FY 24 Plaintiffs are also identical and provide as follows:

> 1. <u>General</u>. The regulations at 2 C.F.R. §§ 200.340-343 set forth the administrative requirements concerning the termination of federal awards. Termination means the ending of a federal award, in whole or in part, at any time before the planned end of the period of performance. As required by 2 C.F.R. § 200.340(b), the purpose of this term and condition is to specify termination provisions applicable to the federal award in addition to those set forth in the regulations.

> 2. <u>Termination by DHS</u>. The regulation at 2 C.F.R. § 200.340(a) provides that DHS may unilaterally terminate the federal award in whole or part if the Recipient fails to comply with the terms and conditions of the federal award and when, to the greatest extent authorized by law, the federal award no longer effectuates the program goals or agency priorities. When terminating a federal award, the DHS will promptly notify the Recipient in writing via email of the

7

termination that will set forth the reasons for the termination and the effective date of the termination.  A Recipient may object and provide written information and documentation challenging the termination electronically via email to DHS within 30 days of receiving the termination notice.  The termination notice may provide additional procedures for submitting an objection to the termination.

*See e.g.*, ECF No. 32-8 at J.R. 0452.

The Noem Memorandum And The Freeze Letter

On January 28, 2025, Secretary Noem issued the Noem Memorandum to DHS component agency and office heads, which placed "on hold pending review," "all Department grant disbursements and assessments of grant applications that: (a) go to non-profit organizations or for which non-profit organizations are eligible, and (b) touch in any way on immigration, . . . except to the extent required by controlling legal authority."  ECF No. 30-3 at J.R. 001.  The Noem Memorandum provides three reasons for this funding freeze: "(1) concerns that these grants may be funding illegal activities, such as encouraging or inducing illegal immigration, 8 U.S.C. § 1324(a)(1)(A)(iv), or illegal harboring of illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(ii)-(iii); (2) concerns that there may be racially discriminatory language in certain grants; and (3) concerns that these grants may not be an efficient use of government resources."  *Id*.  The Noem Memorandum also provides that the funding freeze is "[e]ffective immediately."  *Id*.

On February 4, 2025, the Plaintiffs received *via* email a letter from USCIS's CIGP email address stating that, "[p]ursuant to the Department of Homeland Security Secretary Kristi Noem's memorandum dated January 28, 2025, and effective immediately, your grant from U.S. Citizenship & Immigration Services is frozen" (the "Freeze Letter").  ECF No. 30-3 at J.R. 002.  The Freeze Letter also states that "payments are not available at this time," and that USCIS "recognize[s] this will have an impact on your organization" but is "unable to provide a timeline on this freeze."  *Id*.

The Grant Termination Letters

On March 27, 2025, DHS sent another letter to each of the Plaintiffs (the "Termination Letters") that terminates their Grants and provides as follows:

> Pursuant to 2 C.F.R. § 200.340(a)(2) and the terms and conditions of your award, DHS has determined that the scope of work performed under this award no longer effectuates the program goals and the Department's priorities. [The Plaintiff] must cease all federally funded work under this Award and any costs incurred for such work on or after the date of this letter will be unallowable.

*See* ECF No. 31-2 at J.R. 220; ECF No. 31-3 at J.R. 223; ECF No. 31-4 at J.R. 226; ECF No. 31-5 at J.R. 229; ECF No. 31-6 at J.R. 232; ECF No. 31-7 at J.R. 235; ECF No. 31-8 at J.R. 238; ECF No. 31-9 at J.R. 241; ECF No. 31-10 at J.R. 244.  The Termination Letters state that the Plaintiffs' Grants are terminated effective 30 days after the date of the letter. *Id*.

The Termination Letters further state that any costs incurred by the Plaintiffs after the date of the Termination Letters are not allowable, unless the costs are expressly authorized by DHS, and that any costs resulting from proper financial obligations before the date of the Termination Letters would be allowable, if not incurred in anticipation of termination and otherwise been allowable had the award not been terminated.  *Id*.  Lastly, the Termination Letters provide the amount of remaining unobligated federal funding for each of the Grants and provide the process for the Plaintiffs to submit an objection to the termination and closeout of their respective Grant.  *Id*.

<u>The Court's April 14, 2025, Decision</u>

After the Plaintiffs filed the original complaint in this matter, they moved for a temporary restraining order, preliminary injunction and APA stay, based upon their APA claims, pursuant to Fed. R. Civ. P. 65 and 5 U.S.C. § 705.  ECF No. 30.  The Court held a hearing on the Plaintiffs' motion on April 8, 2025.  ECF No. 43.

At the conclusion of the hearing, the Court denied the Plaintiffs' motion as to the FY 23 Plaintiffs and held-in-abeyance further consideration of the motion as to the remaining FY 24 Plaintiff at that time—ILCM.  ECF No. 44.  And so, on April 14, 2025, the Court issued a written Memorandum Opinion (the "April 14, 2025, Decision") consistent with its oral ruling.  ECF No. 46.

In the April 14, 2025, Decision, the Court held that the FY 23 Plaintiffs had not shown a likelihood of success upon the merits of their APA claims, because the Plaintiffs

failed to establish that the Court possessed subject-matter jurisdiction over the FY 23 Plaintiffs' APA claims in this matter. *See id*. at 20. Specifically, the Court held that the source of the rights with regards to the FY 23 Plaintiffs' APA claims "is their respective Grant agreements with DHS," because: (1) the FY 23 Plaintiffs relied upon these Grants to establish standing and to show irreparable harm in this case and (2) the Grant Agreements provide the legal basis for their APA claims. *Id*. at 16-18. In this regard, the Court observed that the Uniform Guidance regulations relied upon by the Plaintiffs to support their APA claims are expressly incorporated into the FY 23 Plaintiffs' Grant Agreements and that these Grant Agreements also contain a termination provision that controls the termination of the Grants. *Id*.

The Court also held that the complaint shows that the Plaintiffs' requested relief in this case is "monetary in nature and backward-looking," because the complaint makes clear that the Plaintiffs are seeking reimbursement for expenses already incurred under their Grants and the evidence before the Court also shows that FY 23 Plaintiffs would not be able to incur future expenses under the Grants without the prior authorization of DHS. *Id*. at 19. Lastly, the Court observed that the Plaintiffs had not shown the FY 23 Plaintiffs do not have an adequate remedy in the United States Court of Federal Claims for their claims, because these Plaintiffs may pursue claims to recover termination costs and injunctive relief that is incident to their claim for monetary damages before that court. *Id*. at 20. Because the Court concluded that the Plaintiffs had not shown a likelihood of success on the FY 23 Plaintiffs' APA claims, the Court denied the Plaintiffs' motion with respect to the FY 23 Plaintiffs and held in abeyance further consideration of the motion with respect to the FY 24 Plaintiff. *Id*. at 20-21.

<u>The Amended Complaint</u>

On April 25, 2025, the Plaintiffs filed an amended complaint by leave of the Court. ECF No. 52. In the amended complaint, the Plaintiffs allege that Secretary Noem's decisions to freeze, and later terminate, their Grants constitute a "dismantling" of the CIGP. ECF No. 52 at ¶¶ 6-7 and 56-73. The Plaintiffs also allege that the "dismantling" of the CIGP is arbitrary and capricious, contrary to law, a violation of separation of powers, a violation of the Due Process Clause of the Fifth Amendment of the United States

10

Constitution, ultra vires and a violation of the First Amendment of the United States Constitution. *Id.* at ¶¶ 127-164.

Relevant to the pending motion, the Plaintiffs allege in the amended complaint that they each received a CIGP Grant and used the funds provided by those Grants to provide certain services and programs. ECF No. 52 at ¶¶ 5-6 and 51; *see also* ECF No. 52 at ¶¶ 87, 91, 95, 99, 103, 107, 111, 115, 118 and 122. The Plaintiffs also allege that the Defendants began "dismantling" the CIGP when Secretary Noem froze their Grant funds in the January 28, 2025, Noem Memorandum. *Id.* at ¶¶ 56-59.

The Plaintiffs further allege that the Defendants "terminate[d] the entirety of the CIGP" with the Freeze Letters and "entirely shut down the CIGP" with the Termination Letters that were sent "to all or nearly all current CIGP funding recipients—Plaintiffs included—informing them that, effective immediately, their grants had been fully terminated." *Id.* at ¶¶ 60-72. And so, the Plaintiffs contend that "[u]pon information and belief all current CIGP grantees—including Plaintiffs—received virtually identical termination letters regardless of their grant type or term" and "[u]pon information and belief, Defendants have shuttered the CIGP program in its entirety." *Id.* at ¶ 73.

In addition, the Plaintiffs allege that "[t]he dismantling of the CIGP is harming, and will continue to harm, [them]," because the Plaintiffs have lost access to their Grant funds. *Id.* at ¶ 74; *see also id.* at ¶¶ 6 and 134. In this regard, the Plaintiffs allege that they "built their programs with the expectation that they would be reimbursed… for the entire length of their grant performance periods," as specified in their Grant Agreements and that "each plaintiff still has outstanding grant funds obligated to them for future grant work." *Id.* at ¶¶ 77 and 79.

Given this, the Plaintiffs allege that the "dismantling" of the CIGP prevents them from being reimbursed for the activities they will undertake for the remainder of the performance periods for their respective Grants. *Id.* at ¶¶ 78-81. And so, the Plaintiffs allege that they are being irreparably harmed by the "dismantling" of the CIGP, because they have been forced to lay off or reassign Grant-funded staff, terminate relationships with other organizations and struggled to fund legal representation. *Id.* at ¶¶ 82-86.

As relief, the Plaintiffs request that the Court:

     a.   "Declare the dismantling of the Citizenship and Integration Grant Program unconstitutional and unlawful;

     b.   Vacate and set aside the CIGP dismantling, including the January 28, 2025 Noem Memorandum, the February 4 Freeze Letter, the March 27 mass termination email and letters, and Defendants' other actions to implement the dismantling, pursuant to 5 U.S.C. § 706(2), and declare that these actions are arbitrary and capricious and contrary to law;

     c.   Preliminarily and permanently enjoin Defendants from dismantling the CIGP, including enjoining them from implementing or giving effect to the Noem Memorandum, the Freeze Letter, or the termination email and letters;

     d.   Postpone the effective date of the CIGP dismantling and any actions by Defendants to implement it or to otherwise freeze or terminate the disbursement of appropriated and obligated CIGP funds, pursuant to 5 U.S.C. § 705;

     e.   Order Defendants to file a status report within 48 hours of the entry of a preliminary injunction or 5 U.S.C. § 705 stay, and at regular intervals thereafter, confirming compliance with the order;

     f.   Enjoin Defendants from imposing any negative consequences on Plaintiffs for noncompliance with the terms of their respective CIGP grants if such noncompliance is due directly or indirectly to any aspect of Defendants' dismantling of the CIGP;

     g.   Award Plaintiffs reasonable attorneys' fees and costs; and

     h.   Grant such other and further relief as the Court may deem appropriate."

*Id*. at Prayer for Relief.

**B. Relevant Procedural History**

On March 17, 2025, the Plaintiffs filed the complaint. ECF No. 1. On April 25, 2025, the Plaintiffs filed the amended complaint and a renewed motion for preliminary injunction and for APA stay, pursuant to Fed. R. Civ. P. 65 and 5 U.S.C. § 705. ECF Nos. 52 and 53.

12

On May 6, 2025, the Defendants filed a response in opposition to the Plaintiffs' motion.  ECF No. 63.  On May 12, 2025, the Defendants filed a notice of supplemental authority, providing an Order from a case before the United States Court of Appeals for the District of Columbia Circuit involving grant funding.  ECF No. 65.

On May 12, 2025, the Plaintiffs filed their reply brief.  ECF No. 66.  On May 20, 2025, the Court held a hearing on this matter.  ECF No. 67.

The Plaintiffs' motion having been fully briefed, the Court resolves the pending motion.

## III.   LEGAL STANDARDS

### A.  Rule 65 And Preliminary Injunctions

To obtain a preliminary injunction, the party seeking the relief must show that: (1) there is a likelihood of success on the merits; (2) there is a likelihood the movant will suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in movant's favor; and (4) the injunction is in the public interest.  *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *League of Women Voters of North Carolina v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014).  When the Government is the opposing party, the balance of equities and public interest prongs merge.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  A preliminary injunction cannot issue unless all of these factors are satisfied.  *See Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013).  And so, the Court may issue a preliminary injunction to protect the status quo, or to return the parties to the "last uncontested status between the parties which preceded the controversy," so that the Court has time to "render a meaningful judgment on the merits."  *League of Women Voters of North Carolina*, 769 F.3d at 236; *United States v. South Carolina*, 720 F.3d 518, 524 (4th Cir. 2013) (quoting *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003)).

### B.  The Interplay Between The APA And The Tucker Act

It is well-established that "[t]he United States is immune from suit unless it unequivocally consents" to be sued.  *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 322 (2020).  One such waiver of the Government's immunity from suit is provided under the APA, which waives the Government's sovereign immunity for claims

against the United States "seeking relief other than money damages." 5 U.S.C. § 702; *see also* 28 U.S.C. § 1331 (federal question statute). The Court's judicial review under the APA is limited to review of a "final agency action." 5 U.S.C. § 704. And so, the Court may only set aside agency action, findings, and conclusions if they are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Ohio Valley Env't Coalition v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) (quoting 5 U.S.C. § 706(2)).

In addition to seeking injunctive relief, a plaintiff bringing a claim under the APA may also seek a stay of agency action pursuant to Section 705 of the APA. 5 U.S.C. § 705. "The standards for granting … a preliminary injunction, and a § 705 stay are essentially the same." *Am. Federation of State, Cnty. & Mun. Emps. v. Soc. Sec. Admin.*, No. CV ELH-25-0596, 2025 WL 868953, at *53 (D. Md. Mar. 20, 2025) (citations omitted). The Supreme Court has recognized the "distinction between an action at law for damages . . . and an equitable action for specific relief" and observed that "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988). And so, the APA's exclusion for money damages in Section 702 does not include claims for specific relief, including monetary relief, where the plaintiff sought simply to enforce a statutory mandate. *Id*. at 900-01, 910 & n. 48. The Fourth Circuit has similarly held that "[t]he APA allows private parties to sue the federal government in district court over final agency actions, so long as they seek relief other than monetary damages 'for which there is no other adequate remedy in a court.'" *Coleman v. Kendall*, 74 F.4th 610, 615 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 818 (2024) (quoting *Randall v. United States*, 95 F.3d 339, 346 (4th Cir. 1996)).

Another waiver of the Government's sovereign immunity is found under the Tucker Act, which waives sovereign immunity for claims brought against the United States founded "upon any express or implied contract." 28 U.S.C. § 1491(a)(1). For such claims, the United States Court of Federal Claims has exclusive jurisdiction when the amount sought is greater than $10,000. 28 U.S.C. § 1346(a)(2).

14

Relevant to the pending motion, the Fourth Circuit has long recognized that "[t]he interplay between the Tucker Act and the APA is somewhat complicated and raises some significant issues of federal court jurisdiction." *Randall*, 95 F.3d at 346. In this regard, courts have held that the Tucker Act applies if the issue in a case is "at its essence" a contract claim. *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982). To determine the essence of a claim, the Court considers: (1) "the source of the rights upon which the plaintiff bases its claims," and (2) "the type of relief sought (or appropriate)." *Id*. at 968. The Fourth Circuit has also held that a plaintiff primarily seeks injunctive relief when the relief requested is "not . . . an incident of, or collateral to, a monetary award." *Coleman*, 74 F.4th at 615 (citing *Randall*, 95 F.3d at 347). And so, the Court looks to the complaint, with "an eye toward 'the true nature of the action,'" to determine whether the exercise of jurisdiction is appropriate under the APA or the Tucker Act. *Am. Ass'n of Colls. for Teacher Educ. v. McMahon*, No. 25-cv-00702, 2025 WL 863319, at *3 (D. Md. Mar. 19, 2025) (quoting *Williams v. Roth*, No. 21-cv-02135, 2022 WL 4134316, at *4 (D. Md. Sept. 12, 2022)).

Recently, the Supreme Court addressed the question of whether jurisdiction is properly found under the APA or the Tucker Act in a challenge to the Government's decision to freeze the funding for certain grants to teachers awarded through programs authorized by a federal statute. *Dep't of Educ. v. California*, 145 S. Ct. 966 (2025). In that case, the Supreme Court stayed the district court's temporary restraining order pending appeal, because, among other things, the Supreme Court found that "the Government is likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA." *Id*. at 968 (citing *Sampson v. Murray*, 415 U.S. 61, 87 (1974)).

## IV.    ANALYSIS

The Plaintiffs have renewed their motion for a preliminary injunction and stay, seeking to enjoin Secretary Noem's decision to "dismantle" the CIGP, pursuant Fed. R. Civ. P. 65 and 5 U.S.C. § 705. ECF No. 53. In their memorandum in support of their motion, the Plaintiffs argue that the "dismantling" of the CIGP violates the APA, separation of powers and is ultra vires. ECF No. 53-1. The Plaintiffs also argue that the Court should grant their motion for emergency injunctive relief, because: (1) the Court has jurisdiction to

15

consider their APA, separation of powers and ultra vires claims; (2) they are likely to succeed upon the merits of these claims; (3) they are suffering irreparable harm, due to the Defendants' "dismantling" of the CIGP; and (4) the balance of the equities favor awarding their requested emergency relief. ECF No. 53-1 at 10-29. And so, the Plaintiffs request, that the Court grant their motion and "enjoin the Defendants from dismantling the CIGP or postpone the effective date of this dismantling under Section 705 of the APA until the Court can further consider the merits." *Id*. at 30.

The Defendants counter that the Court should not award the emergency injunctive relief that the Plaintiffs seek, because the Plaintiffs are not likely to succeed upon the merits of their claims, the Plaintiffs have not shown irreparable harm and the balance of the equities does not support awarding such relief. ECF No. 63. Specifically, the Defendants argue that: (1) the FY 23 Plaintiffs' APA, Constitutional law and ultra vires claims are, at bottom, contract claims over which the United States Court of Federal Claims has exclusive jurisdiction; (2) the funding decisions at issue in this case are committed to the agency's discretion and, thus, not subject to judicial review; and (3) the terminations of the Grants at issue are not contrary to law. *Id*. at 8-25. The Defendants also argue that: (1) the Plaintiffs have not demonstrated irreparable harm, because the Plaintiffs' alleged injuries can be remedied through the payment of money damages and (2) the balance of equities does not favor the Plaintiffs, because injunctive relief would "irreparably harm the sovereign and pecuniary interests of the United States." *Id*. at 25-30. And so, the Defendants request that the Court deny the Plaintiffs' motion. *Id*. at 31.

For the reasons that follow, a careful reading of the amended complaint shows that the Plaintiffs have not established that the Court possesses subject-matter jurisdiction over the FY 23 Plaintiffs' APA, separation of powers and ultra vires claims in this case, because the source of the rights for these claims with regards to the FY 23 Plaintiffs is these Plaintiffs' Grant Agreements and the relief sought by the Plaintiffs related to these claims is largely monetary in nature and backward-looking. To the extent that the Plaintiffs also assert APA claims in the amended complaint based upon the "dismantling" of the CIGP, the Plaintiffs also fail to identify a discrete agency action to support these claims under the APA.

16

Given these concerns, the Plaintiffs have not met their burden to show a likelihood of success upon the merits of their APA, separation of powers and ultra vires claims. And so, the Court DENIES the Plaintiffs' motion.

**A. The Plaintiffs Have Not Shown A Likelihood Of Success**

    **1. The Plaintiffs Have Not Established That This Court Has Subject-Matter Jurisdiction Over The FY 23 Plaintiffs' Claims**

As an initial matter, the Plaintiffs have not shown a substantial likelihood of success upon the merits of the FY 23 Plaintiffs' APA, separation of powers and ultra vires claims, because they have not established that the Court possesses subject-matter jurisdiction to consider these claims. In the amended complaint, the Plaintiffs assert APA claims challenging the "dismantling" of the CIGP upon the grounds that the Defendants' "dismantling" of the program is arbitrary and capricious and contrary to the Homeland Security Act, the FY 23 and FY 24 appropriations legislation and the Uniformed Guidance. ECF No. 52 at ¶¶ 127-144. As the Court previously observed, the factual allegations in the case make clear that the essence of FY 23 Plaintiffs' APA claims is a breach of contract claim that seeks to recover monetary damages from the Government.

In this regard, courts have long recognized that the waiver of sovereign immunity provided in the Tucker Act applies to claims against the United States, if the claim is "at its essence" a contract claim against the Government. *Megapulse*, 672 F.2d at 967. And so, the United States Court of Federal Claims has exclusive jurisdiction over such claims. *Id*; 28 U.S.C. § 1346(a)(2).

To determine whether this Court has subject-matter jurisdiction over the FY 23 Plaintiffs' APA claims here, the Court looks to the amended complaint to determine: (1) the source of the rights upon which the Plaintiffs base these claims and (2) the type of relief sought in this case. *Megapulse*, 672 F.2d at 968; *Am. Ass'n of Colls. for Teacher Educ.*, 2025 WL 863319, at *3 (quoting *Williams*, 2022 WL 4134316, at *4). The application of the *Megapulse* test to the facts of this case shows that the source of the rights for FY 23 Plaintiffs' APA claims is their Grant Agreements and that the FY 23 Plaintiffs seek relief that is largely monetary in nature and backward-looking for several reasons.

17

First, a careful reading of the amended complaint shows that the source of the FY 23 Plaintiffs' APA claims is their Grant Agreements with the Government, because the Plaintiffs allege and acknowledge in the amended complaint that each FY 23 Plaintiff received a CIGP Grant and used the Grant funds to provide certain services and programs. ECF No. 52 at ¶¶ 5-6 and 51; *see also* ECF No. 52 at ¶¶ 87, 91, 95, 99, 103, 107, 111 and 118. The Plaintiffs also allege in the amended complaint that all Plaintiffs in the case have been irreparably harmed by the loss of the funds provided under their Grants. ECF No. 52 at ¶¶ 6, 74-86 and 134.

A careful reading of the amended complaint also shows that the Plaintiffs seek to challenge the Defendants' decision to terminate their respective Grants. In the amended complaint, the Plaintiffs allege that the Defendants terminated each of their Grants and they acknowledge that the Grant Agreements for the FY 23 Plaintiffs contain a termination provision. ECF No. 52 at ¶ 63. Specifically, it is undisputed that Section N of the FY 23 Plaintiffs' Grant Agreements provides that:

> Either the Recipient or the DHS may terminate this Award by giving written notice to the other party at least thirty (30) calendar days prior to the effective date of the termination. All notices are to be transmitted to the DHS Grants Officer via the email address identified on the Notice of Award. The Recipient's authority to incur new costs will be terminated upon arrival of the date of receipt of the letter or the date set forth in the notice. Any costs incurred up to the earlier of the date of the receipt of the notice or the date of termination set forth in the notice will be negotiated for final payment. Closeout of this Award will be commenced and processed pursuant to 2 C.F.R. § 200.344.

*See* ECF No. 32-1 at J.R. 0266; ECF No. 32-2 at J.R. 0291; ECF No. 32-3 at J.R. 0318; ECF No. 32-4 at J.R. 0345; ECF No. 32-5 at J.R. 0372; ECF No. 32-6 at J.R. 0399; ECF No. 32-7 at J.R. 0426; and ECF No. 32-9 at J.R. 0477. And so, the plain language of the FY 23 Plaintiffs' Grant Agreements shows that the Defendants' termination of these Grants is governed by the terms of the FY 23 Plaintiffs' Grant Agreements.

The Plaintiffs also allege that the "dismantling" of the CIGP, and the termination of their Grants, is contrary to the Uniform Guidance. ECF No. 52 at ¶ 142. But there is no

dispute in this case that the Uniform Guidance is also incorporated into the FY 23 Plaintiffs' Grant Agreements. ECF No. 52 at ¶¶ 48 and 142; *see* ECF No. 32-1 at J.R. 0267; ECF No. 32-2 at J.R. 0292; ECF No. 32-3 at J.R. 0319; ECF No. 32-4 at J.R. 0346; ECF No. 32-5 at J.R. 0373; ECF No. 32-6 at J.R. 0400; ECF No. 32-7 at J.R. 0427; ECF No. 32-9 at J.R. 0478 (Grant Agreement Section Q "Governing Provisions"); *see also* 2 C.F.R. §§ 200 *et seq*. And so, again the source of the FY 23 Plaintiffs' rights to challenge the termination of their Grants appears to be their respective Grant Agreements. For these reasons, the Court reads the amended complaint to, in essence, assert APA claims that are, in fact, based upon the FY 23 Plaintiffs' Grant Agreements.

The Court is also not persuaded by the Plaintiffs' argument that the source of the rights for their APA, separation of powers and ultra vires claims is regulatory, statutory and/or constitutional in nature. In this regard, the Plaintiffs argue that their claims are based upon the FY 23 appropriations legislation, Section 271(f)(2) of the Homeland Security Act and the Uniformed Guidance. ECF No. 52 at ¶¶ 139-142. But the Plaintiffs point to no rights conferred by the FY 23 Appropriations Act that would entitle them to continue to receive Grant funds. Rather, the Court reads the FY 23 Appropriations Act to appropriate funds to be made available to the CIGP until September 30, 2024—a date which has long passed. *See* the FY 23 Appropriations Act.

The Plaintiffs similarly fail to identify any right conferred by the Homeland Security Act that would allow them to continue receiving Grant funds. Notably, the Homeland Security Act does not make reference the CIGP and it is undisputed that this legislation pre-dates the creation of the CIGP. *See* 6 U.S.C. § 271(f)(2); *see* ECF No. 52 at ¶¶ 35 (citing Homeland Security Act of 2002, Pub. L. No. 107-296) and 41 (recognizing that the CIGP was created in 2009). In addition, as discussed above, the Plaintiffs have not shown that the source of their claims is regulatory, because the Uniform Guidance is incorporated into their Grant Agreements. And so, the Plaintiff have simply not shown that the Court would look to sources beyond their Grant Agreement to resolve these claims.

While the Plaintiffs do allege in the amended complaint that the Defendants violated separation of powers by "dismantling" the CIGP, because the Defendants have refused to spend money appropriated by Congress for that program, they point to no

19

language in the relevant appropriations legislation to support this claim. ECF No. 52 at ¶ 140. The Plaintiffs also argue that the "dismantling" of the CIGP is ultra vires, because no statute, constitutional provision or source of law authorizes the Defendants to withhold the funds appropriated for the CIGP. *Id*. at ¶ 144. But again, they point to no language in the relevant appropriations legislation, or any other law, to support this claim. Given this, the Plaintiffs have also not shown that their separation of powers and ultra vires claims provide an independent basis for the Court to exercise jurisdiction in this case.

The amended complaint also makes clear that the relief sought by the Plaintiffs with regards to their APA, separation of powers and ultra vires claims is identical, monetary in nature and backward-looking. With regards to the monetary nature of the relief sought in this case, the amended complaint makes plain that Plaintiffs seek to obtain the Grant funds that have been awarded under their Grant Agreements. Notably, the Plaintiffs state in their Prayer for Relief that they request that the Court:

> **Vacate and set aside the CIGP dismantling, including the January 28, 2025 Noem Memorandum, the February 4 Freeze Letter, the March 27 mass termination email and letters, and Defendants' other actions to implement the dismantling**, pursuant to 5 U.S.C. § 706(2), and declare that these actions are arbitrary and capricious and contrary to law;

> Preliminarily and permanently enjoin Defendants from dismantling the CIGP, **including enjoining them from implementing or giving effect to the Noem Memorandum, the Freeze Letter, or the termination email and letters**; [and]

> **Postpone the effective date of the CIGP dismantling and any actions by Defendants to implement it or to otherwise freeze or terminate the disbursement of appropriated and obligated CIGP funds**, pursuant to 5 U.S.C. § 705 [.]"

ECF No. 52 at Prayer for Relief (emphasis added). Simply put, the relief that the Plaintiffs seek would require that the Defendants unfreeze the Grant funds and honor the Plaintiffs' requests for reimbursement of expenses incurred under the CIGP.

In fact, the Plaintiffs acknowledge in the amended complaint that "[e]ach plaintiff still has outstanding grant funds obligated to them for future grant work" and "[i]f the

CIGP had not been dismantled, Plaintiffs would perform approved grant work, then seek reimbursement from Defendants for that work."  ECF No. 52 at ¶ 79.  Given this, the relief sought by the Plaintiffs would, at bottom, allow them to continue to receive Grant funds from the Government.

The Plaintiffs' requested relief is also largely backward-looking, and akin to monetary damages, because the amended complaint makes clear that the Plaintiffs primarily seek reimbursement for work already performed under their Grant Agreements. In this regard, the Plaintiffs acknowledge in the amended complaint that "[n]early all Plaintiffs have sought or will soon seek reimbursement for grant work completed until the date of the grant termination letters."  *Id*. at ¶ 79.  As discussed above, the Termination Letters issued to the Plaintiffs prohibit the Plaintiffs from incurring new costs under the Grants without the prior authorization of DHS.[3]  *See* ECF No. 31-2 at J.R. 220; ECF No. 31-3 at J.R. 223; ECF No. 31-4 at J.R. 226; ECF No. 31-5 at J.R. 229; ECF No. 31-6 at J.R. 232; ECF No. 31-7 at J.R. 235; ECF No. 31-8 at J.R. 238; ECF No. 31-9 at J.R. 241; ECF No. 31-10 at J.R. 244.  And so, these facts show that the monetary relief that the FY 23 Plaintiffs seek is backward-looking.

For each of these reasons, the Plaintiffs have not met their burden to show a likelihood of success upon the merits of the FY 23 Plaintiffs' claims.

## 2. The Plaintiffs Have Not Established That This Court Has Subject-Matter Jurisdiction Over Their "Dismantling" Claim

As a final matter, the Plaintiffs have also not shown a likelihood of success on their APA claims based upon the "dismantling" of the CIGP, because they do not identify a discrete agency action upon which to base these claims.  It is well-established that the APA only provides a waiver of the Government's sovereign immunity for judicial review of "discrete agency actions."  *Norton v. S. Utah Wilderness All. ("SUWA")*, 542 U.S. 55, 64

---

[3] To the extent that the Plaintiffs seek to obtain Grant funds for future work, this relief appears to be, at bottom, a request for specific performance of their Grant Agreements.  *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 79-80 (D.C. Cir. 1985) ("[A] complaint involving a request for specific performance must be resolved by the Claims Court.").

(2004); *see* 5 U.S.C. §§ 702, 704.  Given this, the Plaintiffs must "identify specific and discrete governmental conduct, rather than launch a 'broad programmatic attack' on the government's operations," to support their APA claims.  *New York v. U.S. Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019) (citing *SUWA*, 542 U.S. at 64).  And so, the Plaintiffs may not use the APA to mount "wholesale" challenges to an agency's "entire program."  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890-91 (1990) (cleaned up).

Here, the amended complaint makes clear that the Plaintiffs seek to mount a wholesale, programmatic challenge to the Government's operation and management of the CIGP.  Indeed, the Plaintiffs acknowledged during the May 20, 2025, hearing that they seek to challenge the "wholesale shuttering" of the CIGP.  ECF No. 67.  Given this, the Court is not satisfied that the Plaintiffs can pursue such a claim under the APA.  *Lujan*, 497 U.S. at 890; *SUWA*, 542 U.S. at 64.  And so, for this independent reason, the Plaintiffs have not shown a likelihood of success upon the merits of their APA claims.

## V.  CONCLUSION

In sum, a careful reading of the amended complaint shows that the Plaintiffs have not established that the Court possesses subject-matter jurisdiction over the FY 23 Plaintiffs' APA, separation of powers and ultra vires claims in this case, because the source of the rights for these claims is the FY 23 Plaintiffs' Grant Agreements and the relief sought by the Plaintiffs related to these claims is largely monetary in nature and backward-looking.  To the extent that the Plaintiffs also assert APA claims based upon the "dismantling" of the CIGP, they also fail to identify a discrete agency action to support these claims.  For these reasons, the Plaintiffs have not met their burden to show a likelihood of success upon the merits of their APA, separation of powers and ultra vires claims.  And so, the Court DENIES the Plaintiffs' motion for a preliminary injunction and APA stay (ECF No. 53).

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge